## CIRCUIT COURT OF AMHERST COUNTY

Commonwealth of Virginia

 v.

Timothy Daniel Harris

### February 7, 1992

BY JUDGE J. MICHAEL GAMBLE

On February 3, 1992, I heard the motion of Mr. Harris to suppress the contraband drugs which were seized from him and the subsequent statements that he gave to the police officer.

Mr. Harris is charged with possession of cocaine in violation of § 18.2–250 of the Code of Virginia. Under the facts of this case, Mr. Harris was riding in an automobile operated by Arthur Truslow on September 20, 1991. Trooper J. D. Wells of the Virginia State Police saw Mr. Truslow operating this vehicle. The trooper knew that Mr. Truslow was operating on a suspended operator's license and proceeded to try to apprehend the Truslow vehicle in which Mr. Harris was an occupant. The trooper chased the Truslow vehicle for a distance, and the vehicle ran off the road. The trooper came upon the vehicle as the occupants were leaving the vehicle. Trooper Wells testified that Mr. Truslow got out of the driver's side and tried to flee. Mr. Harris, who the trooper did not know at that time, got out of the passenger's side and tried to flee. The trooper got out of his vehicle and yelled at both of the occupants to stop. They did so. The trooper did not draw his firearm. The trooper proceeded to place Arthur Truslow under arrest after searching him. The trooper then asked Timothy Daniel Harris to bend over while he frisked Mr. Harris. At that time, the Trooper did not know of any crime that Mr. Harris had committed except that the trooper was suspicious because Mr. Harris appeared to flee from the scene where the vehicle crashed. The trooper did not testify that he feared that Mr. Harris had a concealed weapon or that he was searching for a concealed weapon. The trooper simply stated that he was suspicious of the actions of Mr.

Harris, particularly in light of the fact that he was riding with Mr. Truslow and attempted to flee.

The defendant Harris was asked by the trooper to lean against the motor vehicle while he frisked him. While he was leaning against the vehicle, a package of cigarettes fell out of his pocket. The trooper did not find anything pursuant to his frisk and told Mr. Harris he could leave. While Mr. Harris was walking away, the trooper saw the cigarette package on the ground, picked it up, and told Mr. Harris that he had dropped a cigarette package. The trooper then noticed that the cigarette package had what appeared to be contraband drugs in the cigarette package. The trooper seized the cigarette package and the drugs. The trooper further searched Mr. Harris and found what appeared to be crack cocaine on his person. The trooper also seized this evidence.

Timothy Daniel Harris, through his lawyer, moves to suppress the contraband evidence and subsequent statements made to the police officer. In essence, the defendant argues that the trooper had no legal justification to search him or stop him because Mr. Harris was not under suspicion of committing any crimes. He maintains that the subsequent statements given to the police officer should be suppressed as "fruit of the poisonous tree." Both the United States Supreme Court and the appellate courts of Virginia have held that an investigatory stop may be initiated only when an officer has "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); Brown v. Texas, 443 U.S. 47, 51 (1979); *Bethea v. Commonwealth*, 12 Va. App. 303, 307 (1991); and *Riley v. Commonwealth*, 13 Va. App. 494 (1992).

It is thus clear that there must be an objective reasonableness which can be articulated by the police officer before the fruits of an investigatory stop will be used in a criminal trial.

In *Riley v. Commonwealth*, 13 Va. App. 494 (1992), a police officer observed Riley exit a vehicle in the City of Richmond. The defendant made a motion to his waistband and walked up a sidewalk into the shadows. The police officer never saw any object but believed that Riley had a weapon he was attempting to hide. The officer then stopped Riley and conducted a pat-down search. The search produced a package of cocaine. The Court of Appeals of Virginia held that the police officer had no particularized knowledge of

Riley's involvement in any criminal activity and held that the observations and suspicions were insufficient to justify an investigatory stop. *Id.*

In a similar case, *Goodwin v. Commonwealth*, 11 Va. App. 363 (1990), two Richmond police officers saw Goodwin jam his hands into his coat pockets upon seeing the officers. They did not actually see anything in Goodwin's hands, but they stated that they were concerned that he may have had a weapon. When they stopped and searched Goodwin, they found cocaine. The Court of Appeals held that the police lacked adequate grounds to stop Goodwin. *Id.* at 367.

It thus seems clear that a police officer must have more than a hunch in order to stop and frisk a person. This was again indicated in *Bethea v. Commonwealth*, 12 Va. App. 303 (1991). In *Bethea*, the defendant was a passenger in an automobile operated by another person. Some police officers were taking pictures with a camera. The defendant began making faces at the officers. The officers stopped the vehicle and asked the driver and Bethea to step out of the vehicle. The officer thought that Bethea was holding his waistline and appeared to be adjusting something. He then decided to frisk Bethea. At that time, a bag of cocaine fell from Bethea's shorts. The Court held that making faces was not sufficient justification to stop the vehicle. *Id.* at 308.

In the instant case, the trooper did not know Mr. Harris, who was a mere occupant of the car. He had no knowledge of Mr. Harris committing any crimes. Further, his only suspicion was that Mr. Harris was trying to flee. He did not see any gun or weapon and did not articulate any reason to believe that Harris had a gun or weapon. Based on all of these facts, the stop and frisk of Mr. Harris did not meet the objective test of reasonableness that has been established by both the Supreme Court of the United States and the appellate courts of the Commonwealth of Virginia. Accordingly, the cocaine seized will be suppressed as evidence against him.

Likewise, the statement given by Harris to the trooper was a direct result of the seizure of the cocaine. This is certainly fruit of the poisonous tree (stop and frisk) and must also be suppressed.