[Crim. No. 22753. First Dist., Div. Three. .May 5, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
PEDRO PADILLA, Defendant and Respondent.

## Counsel

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ann K. Jensen, Morris Lenk and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Appellant.

James R. Jenner, Public Defender, and Scott Spear, Assistant Public Defender, for Defendant and Respondent.

## Opinion

**WHITE, P. J.**—The People appeal from the order of the Superior Court of Alameda County dismissing the action against defendant and respondent Pedro Padilla entered after the trial court granted defendant's motion to suppress evidence made pursuant to Penal Code section 1538.5. The People contend on appeal that as a matter of law the trial court erred in granting defendant's motion to suppress.

At approximately 4:40 p.m. on January 13, 1981, Oakland Police Officer Silva was on duty in uniform and in a marked police car. In the

area of 10th Avenue and East 12th Street, he noticed a yellow Buick Opel with no rear license plate and a broken taillight. He turned on his lights and siren. The Opel pulled to the side of the road and stopped. At about this time, Officer Emerson arrived in another police car and parked behind Officer Silva's car.

Officer Silva got out of his car and walked up to the driver's side of the Opel, told the driver the reasons for the traffic stop and asked to see his driver's license and car registration. Defendant was the passenger in the Opel. Officer Silva testified that "At that time my attention was distracted over to the passenger by his hands in his pants pockets and moving around nervously and just looking, turning his head every which way." Officer Silva was concerned that his "safety was in jeopardy because of the way that he [defendant] was acting and his hands being the way they were." Officer Silva directed Officer Emerson "to go over to the driver" and Officer Silva went to the passenger's side of the vehicle. Officer Silva asked defendant for some identification in an effort to get defendant to remove his hands from his pockets.

Defendant, who did not remove his hands from his pockets, stated in Spanish that he had no identification with him and that it was at home. Officer Silva testified that at this point he was "really getting concerned, so I asked him, 'Would you please step out of the vehicle.'" Defendant moved in the seat, kept his hands in his pockets and told Officer Silva that he actually did have identification with him. At this change in defendant's story, Officer Silva's concern increased and he again asked defendant to step out of the car. Defendant took his right hand out of his pants pocket and began to open the door. As he was exiting, defendant removed his left hand from his pocket and put a plastic baggie in a tray between the two bucket seats. The baggie contained a brown powdery substance that appeared to be heroin. Officer Silva reached through the open door and retrieved the baggie. Defendant was placed under arrest. The driver of the Opel was cited for the two vehicle violations and was allowed to leave.

The United States Supreme Court has held that a police officer may ask a driver and/or passenger to get out of a vehicle, when the officer stops a vehicle for a routine traffic violation. (*Pennsylvania* v. *Mimms* (1977) 434 U.S. 106 [54 L.Ed.2d 331, 98 S.Ct. 330]; see also *Foley* v. *Connelie* (1978) 435 U.S. 291, 298 [55 L.Ed.2d 287, 293, 98 S.Ct. 1067].) The Supreme Court found such a request did not violate the Fourth Amendment, because the intrusion into the individual's per-

sonal liberty was "*de minimis*" and "[w]hat is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." (*Pennsylvania* v. *Mimms, supra*, at p. 111 [54 L.Ed.2d at p. 337].) It is not clear whether *Mimms* is the law in California. (See *People* v. *Superior Court* (*Galbreath*) (1980) 104 Cal.App.3d 988, 990-991 [164 Cal.Rptr. 116]; *People* v. *Satchell* (1978) 81 Cal.App.3d 347, 353 [146 Cal.Rptr. 307].) Even if the law in California does not allow a police officer as a matter of course to request individuals to alight from their vehicles, an officer may do so "when appropriate." (*People* v. *Superior Court* (*Simon*) (1972) 7 Cal.3d 186, 206, fn. 13 [101 Cal.Rptr. 837, 496 P.2d 1205].) Such a precautionary measure constitutes "a lesser intrusion than a pat-down search, . . . ." (*Ibid.*)

It is clear in the instant case that Officer Silva did not request defendant to get out of the vehicle "merely by reason of the traffic citation." (*People* v. *Superior Court* (*Brown*) 111 Cal.App.3d 948, 956 [168 Cal.Rptr. 915].) Defendant's conduct gave Officer Silva sufficient reason to fear for his safety. The small intrusion on defendant's personal liberty was justified by the officer's legitimate concern for his safety.

Defendant argues that Officer Silva was not entitled to ask for defendant's identification. To support his position defendant relies upon *Brown* v. *Texas* (1979) 443 U.S. 47, 51 [61 L.Ed.2d 357, 362, 99 S.Ct. 2637], wherein the United States Supreme Court held if an officer detains a person for the purpose of having the person identify himself, the officer must "have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Brown* is not in point in the instant case, because defendant was not detained for the purpose of obtaining his identification. The vehicle in which defendant was a passenger was lawfully stopped for traffic violations. Officer Silva testified that he asked defendant for his identification in an effort to get defendant to remove his hands from his pockets. Clearly, Officer Silva could merely have asked defendant "to keep his hands in sight." (*People* v. *Superior Court* (*Simon*), *supra*, 7 Cal.3d 186, 206, fn. 13.) Officer Silva was also justified in asking defendant for his identification in order to have defendant remove his hands from his pockets. (See *People* v. *Clayton* (1970) 13 Cal.App.3d 335, 337 [91 Cal.Rptr. 494].) Defendant could have produced his identification without removing the plastic baggie from his pocket. The contraband was discovered in this case because of defendant's precipitous behavior in disposing of it, and

not because the officer acted unreasonably or in an overbearing manner.

The order dismissing the action is reversed.

Feinberg, J., and Barry-Deal, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 30, 1982.