STATE of Missouri, Respondent,

v.

William Earl REYNOLDS, Appellant.

No. 51260.

Missouri Court of Appeals,
Eastern District,
Division One.

March 22, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 14, 1988.

Daniel P. Reardon, Jr., St. Louis, for appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Defendant, William Earl Reynolds, appeals from a jury conviction for possession of a controlled substance, pentazocine, in violation of RSMo § 195.240 (1986). He was sentenced as a persistent offender to a term of fifteen years imprisonment. Defendant raises two points on appeal. He maintains that the trial court erred in overruling his motion to suppress the pentazocine which he dropped at the scene of an investigatory stop because the evidence was the fruit of an improper seizure. Defendant also argues that the trial court erred in refusing to quash the jury panel because the prosecuting attorney's use of peremptory challenges was racially discriminatory. Finding defendant's contentions to be without merit, we affirm.

The State's evidence reveals that on December 23, 1984, in the City of Kinloch at approximately 10:00 p.m. Police Officer Clark was in his police vehicle on a routine traffic patrol; he was parked at the intersection of Suburban and Mable. At that time, Officer Clark observed an automobile driven by defendant's brother fail to stop at a stop sign on Suburban and then cut off another police vehicle which was proceeding on Suburban. Accordingly, Officer

Clark engaged his vehicle's emergency lights and siren in order to pursue the automobile. The automobile, which contained five persons including the driver and defendant, stopped after proceeding approximately 100 yards. Officer Clark exited his vehicle and went toward the driver who was in the process of getting out of the automobile. Officer Clark and the driver then conversed regarding the driver's violation and his lack of a valid driver's license. By this time, Police Officer Ewing had arrived and the driver was turned over to Officer Ewing.

Officer Clark observed "a lot of movement" and "talking to each other" among the automobile's four passengers; thus, for the officer's safety, he asked the passengers to exit the automobile. After they had left the automobile, and as Officer Clark began to pat down one of the passengers, he saw defendant drop a small packet to the pavement and try to grind it underneath his foot. Officer Clark immediately retrieved this packet and found the pentazocine, which substance was the subject of defendant's pre-trial motion to suppress and subsequent conviction.

In his first point, defendant alleges that the trial court committed error when it overruled his motion to suppress the pentazocine. Initially, this court notes the applicable standard of review. Upon review of the trial court's order, the facts, and reasonable inferences arising therefrom, are to be stated favorably to the order challenged on appeal. *State v. Blair*, 691 S.W. 2d 259, 260 (Mo. banc 1985). We are free to disregard contrary evidence and inferences. *Id.* This court will affirm the trial court's decision so long as there is sufficient evidence to sustain its determination that the evidence was properly acquired. *Id.*

■ The threshold determination is whether Officer Clark's initial stop of the automobile was lawful. Officer Clark testified that he observed the automobile in which defendant was a passenger fail to stop at a stop sign and cut off another police vehicle. Accordingly, Officer Clark pulled over the automobile. As Officer

Clark had witnessed a traffic violation, he clearly possessed the authority to stop the automobile for the purpose of issuing a traffic summons. *See Pennsylvania v. Mimms*, 434 U.S. 106, 107, 98 S.Ct. 330, 331, 54 L.Ed.2d 331 (1977).

■ The next issue is whether Officer Clark's detention of the passengers and his pat down of them was proper. Officer Clark stated that he observed "suspicious" activity among the four passengers; there was much movement and talking among them. Once a vehicle is lawfully detained for a traffic violation, a police officer may order the occupants to get out of the vehicle. *State v. Sims*, 639 S.W.2d 105, 108 (Mo.App.W.D.1982). The officer need not suspect foul play from the vehicle's occupants at the time of the stop. *See Pennsylvania v. Mimms*, 434 U.S. at 109, 98 S.Ct. at 333. Establishing a face-to-face confrontation diminishes the possibility that the seated passenger can make unobserved movements. *Pennsylvania v. Mimms*, 434 U.S. at 110, 98 S.Ct. at 333. The United States Supreme Court recognizes the "inordinate risk confronting an officer as he approaches a person seated in an automobile." *Id.* The Court points to a study which found that approximately thirty percent of police shootings occur when a police officer approaches a person seated in an automobile. *Id.*

Moreover, a police officer may in appropriate circumstances and in an appropriate manner approach a person for the purpose of investigating possibly criminal behavior even though he lacks probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). An investigative detention is lawful if, in the totality of the circumstances, a "particularized suspicion" results that the person who is stopped is engaged in wrongdoing. *State v. Sims*, 639 S.W.2d at 107. In the present case, after Officer Clark initially stopped the automobile for a traffic violation, the suspicious activity within the vehicle created a particularized suspicion so as to warrant the investigative detention of defendant and the other passengers. As part of the investigative deten-

tion, it was proper for Officer Clark to pat down the passengers. *State v. Sims*, 639 S.W.2d at 108. We note that Officer Clark discovered the pentazocine prior to any pat down of defendant.

■ Finally, having determined that the investigatory detention of defendant was proper, we analyze whether the seizure of the pentazocine was constitutional as falling within the plain view exception to the fourth amendment's warrant requirement. Evidence in plain view may be seized if the authorities are lawfully in a position from which they can see the evidence. *State v. Turner*, 716 S.W.2d 462, 465 (Mo.App.E.D. 1986). As discussed above, Officer Clark was lawfully in a position from which he could see the packet drop to the pavement. *See State v. Baines*, 394 S.W.2d 312, 315 (Mo.1965), *cert. denied*, 384 U.S. 992, 86 S.Ct. 1900, 16 L.Ed.2d 1008 (1966); *State v. Hall*, 534 S.W.2d 508, 510 (Mo.App., E.D. 1976). In *State v. Hall*, the defendant was riding in an automobile when it was stopped by a police officer for a traffic violation. The officer saw the defendant drop a packet, which was later determined to contain heroin, and the officer retrieved the packet. The court held that no invasion of the defendant's constitutional rights occurred. *See also State v. Sims*, 639 S.W. 2d at 108. This point is denied.

■ In his second point, defendant alleges that the trial court erred in refusing to quash the jury panel because the prosecuting attorney's use of peremptory challenges was racially discriminatory. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). After an evidentiary hearing, the trial court issued findings of fact and conclusions of law in which the court found that the defendant did not meet his burden of establishing a *prima facie* case of purposeful discrimination. Defendant has not provided this court with a transcript of the evidentiary hearing. Therefore, the record is not sufficient for us to conduct a review of defendant's claim. The burden of presenting a record of the proceeding in the trial court to the appellate court is on him who brings

the appeal. *State v. Quinn*, 337 S.W.2d 84, 86 (Mo.1960). This point is denied.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.