Opinion
WALLIN, J.
Frank V. appeals the judgment declaring him a ward of the court, contending the trial court improperly denied his motion to suppress *697 evidence and restricted his right to association by imposing an overbroad condition of probation. We affirm.
About 9:45 p.m., Officers Michael Luke and Gary Kirby were dispatched to investigate a report of reckless motorcycle driving on a street in an active gang area. There was no traffic when the officers arrived, but Officer Luke noticed a motorcycle pulling away from the curb in front of a house known for gang activity. The officers made a U-turn, intending to make a traffic stop. As soon as they turned the motorcycle pulled to the curb, even though the officers did not use their overhead lights or siren or signal in any other fashion.[1]
As the officers approached the motorcycle, the driver held out what appeared to be a driver’s license in his left hand. Frank, the passenger, was looking straight ahead with both hands in the front pockets of a bulky leather jacket. On Officer Luke’s order, Frank took his hands out of his pockets. When he tried to put them back in, Luke told him to keep them out. Officer Luke did a patdown search of Frank for weapons and discovered a gun in Frank’s right front jacket pocket.
Frank was adjudged a ward of the court and granted probation. The terms included orders that he obey all gang terms and conditions of probation and not associate with anyone disapproved of by his probation officer.
I
Frank claims the trial court improperly denied his motion to suppress evidence because he was unlawfully detained. Although he was certainly detained at the moment of the patdown, we must first determine if he was unlawfully detained when the officers made their initial contact. “The United States Supreme Court has identified three categories of police contact with persons. The first is referred to as a ‘consensual encounter’ in which there is no restraint on the person’s liberty. There need be no objective justification for such an encounter. The second type, called ‘detention,’ involves a seizure of the individual for a limited duration and for limited purposes. A constitutionally acceptable detention can occur ‘if there is an articulable suspicion that a person has committed or is about to commit a crime.’ The third type involves seizures in the nature of an arrest, which may occur only if the police have probable cause to arrest the person for a crime. [Citations.]” (People v. Bailey (1985) 176 Cal.App.3d 402, 405 [222 Cal.Rptr. 235].)
Here, the motorcycle was not detained. Since it had already voluntarily pulled over to the curb before the officers completed the U-turn or *698 displayed any gesture of authority, such as using overhead lights or a siren, there was no restraint of liberty by the police. (People v. Bailey, supra, 176 Cal.App.3d 402,405.) Because the motorcycle was not detained, neither was Frank.[2] Although Frank may have believed he was under official scrutiny, the objective indicia of a detention were absent. (Ibid.; see also People v. Franklin (1987) 192 Cal.App.3d 935, 940 [237 Cal.Rptr. 840].)
Officer Luke’s order to Frank to remove his hands from his pockets did not transform the consensual encounter into a detention. We are sensitive to the delicate balance between Fourth Amendment rights and a police officer’s safety. “ ‘Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.’ [Citation.] . . . Indeed, it appears ‘that a significant percentage of murders of police officers occurs when the officers are making traffic stops.’... [¶] What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer’s safety.” (Pennsylvania v. Mimms (1977) 434 U.S. 106, 110 [54 L.Ed.2d 331, 336-337, 98 S.Ct. 330].)
Mimms left open the question whether the same rule applies equally to passengers but California cases had previously allowed officers conducting an investigation to request a suspect to step out of the vehicle or to keep his hands in sight for officer safety. (People v. Superior Court (1972) 7 Cal.3d 186, 206, fn. 13 [101 Cal.Rptr. 837, 496 P.2d 1205]; see also People v. Padilla (1982) 132 Cal.App.3d 555, 558 [183 Cal.Rptr. 97]; People v. Maxwell (1988) 206 Cal.App.3d 1004, 1008 [254 Cal.Rptr. 124].) To justify ordering a passenger out of a vehicle, “even an inchoate and unparticularized suspicion that it would be better for the officer’s safety for the passenger to alight is sufficient to justify such a request, because merely stepping out of the vehicle is a minimal intrusion upon privacy, far less than involved in a bodily search, a frisk, or a search of the vehicle. [Citations.]” (People v. Beal (1974) 44 Cal.App.3d 216, 221 [118 Cal.Rptr. 272].) Requesting Frank to keep his hands in sight was even less intrusive.
This is so even though Frank was not the original focus of the officers’ attention. In People v. Stafford (1972) 28 Cal.App.3d 405 [104 Cal.Rptr. 754], two officers on patrol stopped to assist another officer holding a prisoner. The defendant happened to be standing next to a woman who appeared drunk and was yelling abusively. One of the officers stopped the woman and his partner ordered the defendant to remove his hands from his *699 pockets. In upholding that order the court found the “defendant presented a potential danger to his partner’s safety and [the officer] chose a means of neutralizing that danger which involved a minimum intrusion. [Citations.]” (Id. at p. 410.)
Frank relies on People v. Franklin (1987) 192 Cal.App.3d 935 [237 Cal.Rptr. 840]. There the court reasoned: “It is not the nature of the question or request made by the authorities, but rather the manner or mode in which it is put to the citizen that guides us in deciding whether compliance was voluntary or not. [¶] Therefore, the nature of the officer’s request here— asking that appellant remove his hands from his pockets—does not convert the encounter into a detention. However, if the manner in which the request was made constituted a show of authority such that appellant reasonably might believe he had to comply, then the encounter was transformed into a detention.” (Id. at p. 941.) The court in Franklin was concerned with the manner of the communication. It distinguished asking from ordering to determine if the request to remove hands from pockets transformed a consensual encounter into a detention. (Ibid.)
We agree with Franklin's holding that merely asking a suspect to take his hands out of his pockets is not a detention. However, we do not agree with its suggestion that an order to do so automatically transforms a consensual encounter into a detention. A mere request that a citizen remove his hands from his pockets is not the same as a command to stop or stay. The very nature of the latter is more likely to involve a detention. Conversely, the manner of the communication intended to get an individual to remove his hands from his pockets might cause a reasonable person to believe there is no freedom to leave. Both the nature and the manner must be examined.
Officers often detain suspects in circumstances that attract bystanders. A police order for bystanders to keep their hands in sight would not cause them to reasonably believe they were not free to leave. An officer’s concern for personal safety would be satisfied if the bystanders walked away as long as they kept their hands in sight. Telling persons to keep their hands in sight is not the same as telling them to stay.
Here, Officer Luke testified his request was “more a direction, more of an order than asking.” But Frank was not initially detained, he was not the subject of any inquiry, and he was told no more than to remove his hands from his pockets. The order did not turn the encounter into a detention.
*700 Frank also contends the patdown was unreasonable.[3]
 The United States Supreme Court has held a police officer may only conduct a patdown if “criminal activity may be afoot and ... the person with whom he is dealing may be armed and presently dangerous.” (Terry v. Ohio, supra, 392 U.S. 1, 27 [20 L.Ed.2d 889, 909].) “The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] . . . [D]ue weight must be given, not to his inchoate and unparticularized suspicion or ‘hunch,’ but to the specific and reasonable inferences which he is entitled to draw from the facts in light of his experience. [Citation.]” (Ibid.; see also People v. Superior Court, supra, 7 Cal.3d at p. 203.)
We must determine whether Frank’s conduct in placing his hands back in his pockets, after being told to take them out, constituted reasonable grounds for the patdown. It is well settled that “the law requires more than a mere ‘furtive gesture’ to constitute probable cause to search or to arrest .... [Citations.]” (People v. Superior Court (1970) 3 Cal.3d 807, 818 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; see also People v. Superior Court, supra, 7 Cal.3d at p. 206; People v. Cassel (1972) 23 Cal.App.3d 715, 719 [100 Cal.Rptr. 520].) However, a patdown for weapons is less than a “full search” and may be conducted in the absence of probable cause to arrest if the officer has reasonable grounds to believe the suspect is armed and dangerous. (Terry v. Ohio, supra, 392 U.S. at p. 26 [20 L.Ed.2d at pp. 908-909]; see also People v. Superior Court, supra, 3 Cal.3d at p. 829.) The patdown “must be tested by the Fourth Amendment’s general proscription against unreasonable searches and seizures.” (Terry v. Ohio, supra, 392 U.S. at p. 20 [20 L.Ed.2d at p. 905].) In determining what more is required, “ ‘ [t]here is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case . . . (People v. Superior Court, supra, 3 Cal.3d at p. 827.)
Frank argues the patdown was unlawful because placing his hands in his pockets is “as consistent with innocent activity as with criminal activity.” (Irwin v. Superior Court (1969) 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12].) But “[circumstances and conduct which would not *701 excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience . . . (People v. Superior Court, supra, 3 Cal.3d at p. 827.) Further, in disapproving the dictum in Irwin, the Supreme Court stated, “The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal. . . .” (In re Tony C. (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957].)
Here, the officers were in a gang neighborhood at night and confronting two persons whom they recently had observed leaving from the curb of a known gang house, one wearing a heavy coat with his hands in his pockets. “[T]hat an area involved increased gang activity may be considered if it is relevant to an officer’s belief the detainee is armed and dangerous. While this factor alone may not justify a weapon search, combined with additional factors it may.” (People v. King (1989) 216 Cal.App 3d 1237, 1241 [265 Cal.Rptr. 370].) As previously noted, officers may reasonably request traffic detainees to keep their hands in sight. Frank’s starting for his pockets again, after being told to take his hands out, provided an “additional factor” justifing a patdown search for weapons.
California courts may not exclude evidence except where federally compelled. (In re Lance W. (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].) Since the patdown was lawful and the officer confined his search to that minimally necessary to discover the handgun and disarm Frank, the handgun was properly obtained as evidence. (Terry v. Ohio, supra, 392 U.S. at p. 30 [20 L.Ed.2d at p. 911].)
II
Frank contends the juvenile court improperly restricted his right to association by imposing an overbroad condition of probation. Not so. In explaining the condition to Frank, the court stated: “The terms and conditions that I have indicated, the gang terms and conditions, are terms and conditions of association, [¶] If your father or your mother tells you that they don’t want you to hang around with certain people, you can’t hang around with those people. And if your father should find out that you have been hanging around with those people against his orders, all he has to do is tell the probation officer, and they will tell me, and I will have you put back in custody. [¶] The probation officer will also tell you about people that you can’t hang out with. If you hang out with those people, and I find out about it, you will be placed back in custody, [¶] You understand that?”
*702 Welfare and Institutions Code section 730 authorizes courts in juvenile cases to “impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.” A probation condition “will not be held invalid unless it ‘(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality ....”’ (People v. Lent (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].) All three requirements must be met before the condition is invalidated. (Id. at p. 486, fn. 1.)
However, a court’s discretion is not boundless. “ ‘A probationer has the right to enjoy a significant degree of privacy, or liberty, under the Fourth, Fifth and Fourteenth Amendments to the federal Constitution . . . .’ ” (People v. Hodgkin (1987) 194 Cal.App.3d 795, 802 [239 Cal.Rptr. 831].) “ ‘ “Where a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn; to the extent it is overbroad it is not reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights . . . (People v. Pointer (1984) 151 Cal.App.3d 1128, 1139 [199 Cal.Rptr. 357].)
Frank cites several cases where probation was considered over-broad, unreasonable, and unconstitutional.[4] However, they all pertained to adult offenders. “A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.” (In re Todd L. (1980) 113 Cal.App.3d 14, 19 [169 Cal.Rptr. 625]; see also In re Michael D. (1989) 214 Cal.App.3d 1610, 1616 [264 Cal.Rptr. 476].)
The United States Supreme Court has been reluctant to define the “totality of the relationship” between minors and the state. (In re Gault (1967) 387 U.S. 1, 13 [18 L.Ed.2d 527, 538, 87 S.Ct. 1428], See also Carey v. Population Services International (1977) 431 U.S. 678 [52 L.Ed.2d 675, 97 S.Ct. 2010]; In re Scott K. (1979) 24 Cal.3d 395, 401 [155 Cal.Rptr. 671, 595 P.2d 105].) Although minors possess constitutional rights (Planned Parenthood of Missouri v. Danforth (1976) 428 U.S. 52, 74 [49 L.Ed.2d 788, 807-808, 96 S.Ct. 2831]), “[i]t is equally well established . . . that the liberty interest of a minor is not coextensive with that of an adult. ‘[E]ven *703 where there is an invasion of protected freedoms “the power of the state to control the conduct of children reaches beyond the scope of its authority over adults.” ’ [Citations.] Parents, of course, have powers greater than that of the state to curtail a child’s exercise of the constitutional rights the child may otherwise enjoy, for a parent’s own constitutionally protected ‘liberty’ includes the right to ‘bring up children’ [citation,] and to ‘direct the upbringing and education of children.’ [Citation.]” (In re Roger S. (1977) 19 Cal.3d 921, 928 [141 Cal.Rptr. 298, 569 P.2d 1286].)
Frank was declared a ward of the court, which acts in parens patriae. He only challenges as overbroad the condition limiting his right of association to those approved by his probation officer or parents. His purchase of the .38-caliber automatic discovered in his jacket from an unknown “person on the streets” demonstrates the need for such control and the rational relation between the crime and the condition. The juvenile court could not reasonably be expected to define with precision all classes of persons which might influence Frank to commit further bad acts. It may instead rely on the discretion of his parents, and the probation department acting as parent, to promote and nurture his rehabilitation.
The probation condition is consistent with the rehabilitative purpose of probation and constitutional parental authority. Frank’s constitutional right of association has not been impermissibly burdened.
The judgment is affirmed.
Sills, R J., and Moore, J., concurred.
Appellant’s petition for review by the Supreme Court was denied November 14, 1991.

Officer Kirby, who would have been the one to operate the lights, testified to this scenario. Officer Luke stated he believed the lights were used. We view the facts in the light most favorable to the trial court’s ruling. (People v. Leyba (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

Even if the motorcycle was detained, there was sufficient cause since the officers arrived at the scene within minutes of the dispatch, it was almost 10 p.m., and the motorcycle was the only vehicle in sight. This was “sufficient to indicate to a reasonable [person] in the position of the officers that investigation of the [vehicle] and its occupants were [sic ] necessary to the proper discharge of their duties in connection with the [dispatch.] [Citations.]” (People v. Anthony (1970) 7 Cal.App.3d 751, 761 [86 Cal.Rptr. 767].)

Since Frank was physically restrained by the patdown, it constituted a detention. Unlike officer statements, which must be weighed in each case, there is a “bright-line” rule uniformly applicable to all physical restraints. (Terry v. Ohio (1968) 392 U.S. 1, 16 [20 L.Ed.2d 889, 902-903, 88 S.Ct. 1868].) With no practical way to conduct a patdown without physical restraint, the lawfulness of the detention depends on the reasonableness of the patdown. (See People v. McGaughran (1979) 25 Cal.3d 577, 586 [159 Cal.Rptr. 191, 601 P.2d 207] [“[A]n investigatory detention exceedfs] constitutional bounds when extended beyond what is reasonably necessary under the circumstances which made its initiation permissible”].)

(ln re White (1979) 97 Cal.App.3d 141 [158 Cal.Rptr. 562] [blanket prohibition against being in a designated area of Fresno “anytime, day or night,”]; People v. Beach (1983) 147 Cal.App.3d 612 [195 Cal.Rptr. 381] [condition that appellant relocate from her home and community of 24 years]; People v. Bauer (1989) 211 Cal.App.3d 937 [260 Cal.Rptr. 62] [invalid to require probation officer’s approval of residence].)