**Richmond**

GEORGE BETHEA, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0371-89-2

Decided May 26, 1992

Counsel

Russell C. Williams, Assistant Public Defender (David J. Johnson, Public Defender, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General(Mary Sue Terry, Attorney General, on brief), for appellee.

## ON REHEARING EN BANC

Opinion

**COLEMAN, J.**—In this appeal, we hold that a police officer's request or directive for a passenger to step out of a lawfully detained vehicle does not constitute an unreasonable seizure in violation of the Fourth Amendment. A panel of this Court held that the officer illegally seized the passenger by asking or telling him to exit the car and, therefore, the evidence discovered on the passenger after he disembarked was the result of an illegal seizure. *See Bethea v. Commonwealth*, 12 Va. App. 303, 404 S.E.2d 65 (1991). Upon a rehearing *en banc*, we affirm the ruling of the trial court that refused to suppress the evidence; accordingly, we uphold Bethea's conviction for possessing cocaine with the intent to distribute in violation of Code § 18.2-248, for which he was sentenced to fifteen years imprisonment with seven years suspended.

A "seizure" for purposes of the fourth amendment occurs when the"circumstances . . . amount to a show of official authority such that 'a reasonable person would have be-

lieved that he was not free to leave.' " "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person."

*Moss v. Commonwealth*, 7 Va. App. 305, 307, 373 S.E.2d 170, 171-72 (1988) (citations omitted). The Fourth Amendment does not proscribe all seizures, only those that are "unreasonable." *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Whether a seizure is unreasonable is determined by balancing the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Employing this balancing test, the Supreme Court, in *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), held that a police officer who ordered the driver of a lawfully detained vehicle to step out of the car acted reasonably, and thus, the seizure was permissible under the Fourth Amendment. The Court reasoned that the state's "legitimate and weighty" interest in the personal safety of its police officers, who otherwise could be exposed to danger from "assault" and "unobserved movements" if the driver remained in the vehicle, outweighed the *"de minimis"* intrusion into the driver's privacy interest in being required to step out of the vehicle. *Id.* at 110-11.

██ While *Mimms* involved the driver of the vehicle, the principles upon which the decision is based logically extend to encompass a passenger in a lawfully detained vehicle. *See id.* at 122 (Stevens, J., dissenting) ("the court's logic necessarily encompasses the passenger"); *see also Rakas v. Illinois*, 439 U.S. 128, 155 n.4 (1978) (Powell, J., concurring) ("[T]his Court determined in *Pennsylvania v. Mimms*, that *passengers* in automobiles have no Fourth Amendment right not to be ordered from their vehicle, once a proper stop is made") (emphasis added); *Foley v. Connelie*, 435 U.S. 291, 298 (1978); *United States v. Taylor*, 857 F.2d 210, 214 (4th Cir. 1988).

The state courts which have considered the passenger issue, since the *Mimms* decision, have consistently held that it is reasonable for a police officer to direct or ask a passenger to exit a vehicle during a traffic stop and is consonant with Fourth Amendment protections. *See People v. Padilla*, 132 Cal. App. 3d 555, 183 Cal. Rptr. 97, 98 (1982); *People v. Melgosa*, 753 P.2d 221, 225-26

(Colo. 1988) (en banc); *State v. Landry*, 588 So. 2d 345, 347 (La. 1991) (overruling *State v. Williams*, 366 So. 2d 1369 (La. 1978)); *Derricott v. State*, 578 A.2d 791, 793-94 (Md. Ct. Spec. App. 1990), *cert. granted*, 584 A.2d 64 (Md. 1991); *People v. Martinez*, 466 N.W.2d 380, 383-84 (Mich. Ct. App. 1991), *appeal denied*, 480 N.W.2d 106 (Mich. 1992); *State v. Reynolds*, 753 S.W.2d 1, 2 (Mo. Ct. App. 1988). *See also Hatcher v. Commonwealth*, 14 Va. App. 487, 419 S.E.2d 256 (1992).

■ Whether the actions of the officer are reasonable depends on the facts and circumstances of each case. Viewed in the light most favorable to the Commonwealth, *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), the evidence at trial established that George Bethea, Jr., was a passenger in a vehicle lawfully stopped by Officers Marvin Paulus and Harry Warren. Officer Paulus, who was new to the force, had a camera and had taken photographs of Bethea from the patrol car. The officers observed the occupants of the vehicle, and, in particular, Bethea, "making faces," "waving his hands," and "waving" at the officers. Because the vehicle did not display a City of Richmond decal on the windshield, the officers decided to stop the vehicle. When Paulus approached the driver, he asked him to step out of the car and asked to see his operator's license, which the driver did not have. While Paulus ran a Department of Motor Vehicles check to see if the driver was licensed, Officer Warren asked Bethea if he would "please step out of the car" because Bethea's antics just prior to the stop had scared him. Bethea exited the vehicle and Warren "took him in position right in front of his door near the hood of the car," where he remained. Officer Duncan Pence arrived on the scene shortly thereafter and observed rice on the front passenger floor of the vehicle, which he knew was used on occasion to keep cocaine or heroin dry. In the meantime, Pence saw Bethea get up on the rear of the automobile while holding the waistline of his shorts, jump off the vehicle, still holding his waistline with his right hand, and turn toward the vehicle so that Pence could not see his hands. Pence directed Bethea to take his hands away from his waist. Pence told Bethea that he was going to "pat him down in the area that he kept moving with his hands" to make sure he did not have a weapon. As Pence pulled Bethea away from the vehicle, a plastic bag containing rice and several packets of cocaine fell from the left pant leg of Bethea's shorts.

Bethea does not contest the legality of the stop of the vehicle. Also, the Commonwealth concedes that when the police stopped the vehicle and directed Bethea to step outside, Bethea was seized for Fourth Amendment purposes. Consequently, the sole issue is whether Officer Warren acted unreasonably when he requested that Bethea exit the vehicle. Bethea's liberty interest in remaining free from arbitrary intermeddling by state agents must be balanced against the state's interest supporting the officer's intrusive action.

■ The state's interest in the personal safety of its police officers is "legitimate and weighty." *Mimms*, 434 U.S. at 110. By requiring a passenger to exit a vehicle, a police officer who, in a traffic stop, is involved with unknown individuals, is able to establish "a face-to-face confrontation [which] diminishes the possibility, otherwise substantial, that [the occupants of the vehicle] can make unobserved movements [which], in turn, reduces the likelihood that the officer will be the victim of an assault." *Id.* (footnote omitted). We acknowledge that intrusion on a passenger's personal liberty is different than the intrusion on the driver's personal liberty, which was at issue in *Mimms*. Because the passenger has broken no law, he or she reasonably expects the police officers to deal solely with the driver. *See* 2 W. LaFave, *Search and Seizure* § 5.2(h), at 469 (2d ed. 1987). Nevertheless, the intrusion on a passenger's personal liberty is *de minimis*. The intrusion involves no touching, frisking or physical intrusion of the person; it is of short duration and the safety interest to be protected is "legitimate and weighty." To comply with the request, the passenger need only to exit the vehicle, an act that amounts to no more than a mere inconvenience. Like the driver, the passenger "is being asked to expose to view very little more of his person than is already exposed." *Mimms*, 434 U.S. at 111. When the state's interest in allowing police officers to take measures for their protection and safety is weighed against the *de minimis* intrusion on the passenger's personal liberty, the former prevails. Consequently, Officer Warren acted reasonably in requesting that Bethea exit the vehicle and, thus, did not violate his Fourth Amendment rights.

Accordingly, we affirm Bethea's conviction.

*Affirmed.*

Baker, J., Duff, J., Moon, J., Willis, J., Elder, J., and Bray, J., concurred.

Benton, J., with whom Koontz, C.J., and Barrow, J., join, dissenting.

The majority's reliance on *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), to support its contention that the Fourth Amendment allows a police officer to order a passenger from an automobile and detain the passenger during a routine traffic stop is misplaced. "[A]bsent some articulable suspicion vis-a-vis the passenger, the *Mimms* rationale does not authorize removal of the passenger from the vehicle." *State v. Becker*, 458 N.W.2d 604, 607 (Iowa 1990). *See also Heller v. State*, 576 So. 2d 398 (Fla. Dist. Ct. App. 1991); *Johnson v. State*, 601 S.W.2d 326, 329 (Tenn. Crim. App. 1980); *State v. Schlosser*, 774 P.2d 1132, 1135 n.3 (Utah 1989).

The *Mimms* opinion "hold[s] only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the *driver* to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." 434 U.S. at 111 n.6 (emphasis added). Indeed, the Court noted that its decision focused on the driver rather than "occupants" in general. *Id.* at 110 n.5. Underlying the Court's reasoning is the premise that the driver was lawfully detained. *Id.* at 109. That premise is reinforced in *New York v. Class*, 475 U.S. 106 (1986), where the Supreme Court, citing *Mimms*, stated that since the officers in *Mimms* "had personally observed the seized individual in the commission of a traffic offense before requesting that he exit his vehicle," 475 U.S. at 117, that observation allowed the balance between governmental interests and governmental intrusion to "tip in favor of the legality of the governmental intrusion." *Id.* On the other hand, a mere passenger in a vehicle stopped for a routine traffic violation is not the person who committed the traffic offense. At a minimum, the officer must have a reasonable articulable suspicion of personal danger to order the passenger out of the vehicle. *See Johnson*, 601 S.W.2d at 328. The police officer in this case did not articulate such a suspicion

and this record contains no facts which would support such a suspicion.

The majority relies on cases that appear to comport with its determination that *Mimms* applies equally to drivers and passengers. However, for the most part, the passages relied on by the majority are dicta, *see Foley v. Connelie*, 435 U.S. 291, 298 (1978); *Derricott v. State*, 578 A.2d 791, 793-94 (Md. Ct. App. 1990); or found in dicta in a concurring opinion, *see Rakas v. Illinois*, 439 U.S. 128, 155 n.4 (1978) (Powell, J., concurring); or made without analysis of the different privacy interests involved, *see United States v. Taylor*, 857 F.2d 210, 214 (4th Cir. 1988); *People v. Melgosa*, 753 P.2d 221 (Colo. 1988); *State v. Reynolds*, 753 S.W.2d 1, 2 (Mo. Ct. App. 1988). Nothing in *Mimms* indicates that the passenger shares with the driver the same lessened degree of privacy rights when the driver is stopped for a traffic violation.

> The fact that the driver was [committing a traffic violation] authorizes the officer to stop the vehicle in which the passenger is riding. The resulting intrusion on the passenger which flows from the initial stop is an unavoidable consequence of action justifiably taken against the driver. Further intrusion on the passenger is not justified, however, unless some articulable suspicion exists concerning a violation of law by that person, or unless further interference with the passenger is required to facilitate a lawful arrest of another person or lawful search of the vehicle.

*Becker*, 458 N.W.2d at 607.

The record proves that the two City of Richmond police officers were sitting in an unmarked automobile taking "pictures of people for identification" when Bethea began making faces at Officer Warren, who had the camera. After Warren observed Bethea's actions, Warren then:

> told Sergeant Paulus to pull back behind him a little bit. As we were pulling behind him, I checked his car. I wanted to see if there was anything suspicious. First thing I observed was the lack of a city sticker when we got back in the back of his car. I told Sergeant Paulus let's go ahead and pull him.

After the automobile stopped, Paulus walked to the driver's window and asked the driver to get out of the automobile and stand on the sidewalk. Paulus was standing in the street while talking to the driver. Paulus testified that he asked the driver to exit the automobile in order that "he could get out of traffic" while talking to the driver. When Paulus learned that the driver did not have an operator's license with him, Paulus "ran [a] check through the Department of Motor Vehicles to be sure that he did have a driver's license." The dispatcher informed Paulus that the driver had a valid operator's license.

Warren positioned himself on the automobile's passenger side. When he approached the automobile, Bethea did not say anything, make any threats, or resist. Warren described the scene:

I looked at Mr. Bethea first. I glanced into the car. I had — I didn't know at that time if there was a weapon or what in the car. Couple of seconds later I asked him, would you please step out of the car. I took him in position right in front of his door near the hood of the car. There was a passenger in the rear seat, so at this time I asked the passenger in the rear seat to step out of the vehicle.

Warren did not frisk either passenger after they exited the automobile. As they were standing by the automobile, Officer Pence arrived at the scene. Pence testified that when he looked in the automobile, he saw rice in the front passenger seat and on the floor board. He testified "that rice is sometimes used to keep heroin and cocaine dry."

Pence noticed that Bethea was holding his waistline and appeared to be adjusting something as he jumped onto the trunk of the automobile. Pence asked Bethea to move his hands within view and pulled Bethea away from the automobile to frisk him. At that moment, a bag containing cocaine fell from Bethea's shorts. After all three of the occupants were searched, Bethea was arrested. Pence then gave the driver a citation for not having a city license affixed to the automobile and allowed the driver and other passenger to depart.

I cannot agree with the Commonwealth's contention that Warren was justified in ordering Bethea out of the automobile for the officer's protection. When Warren approached the automobile,

Bethea was sitting calmly in the front seat, making no threatening statements or actions. Warren made no inquiry of Bethea regarding the face and hand gestures that he observed. Paulus observed the same conduct as Warren and testified only that Bethea "was waving and making faces." There is no evidence of furtive gestures, belligerence, or uncooperative behavior by Bethea or the other passenger. Moreover, Warren did not testify that there was anything to indicate that Bethea may have been concealing a gun, knife, club, or other dangerous weapon. *See Simmons v. Commonwealth*, 217 Va. 552, 556, 231 S.E.2d 218, 220-21 (1977)(where the investigating officer had reason to believe the suspected burglar was armed and saw the suspect's jacket sagging in the front, "the officer had reasonable cause to believe that defendant might be carrying a concealed weapon and the search was warranted"). Although Warren asked Bethea and the third man to exit the automobile because he "felt more comfortable with both of them standing," he did not frisk either person.

Even though Warren testified that he was frightened by Bethea's behavior, I do not believe that this fear, without more, constitutes a sufficient basis to require Bethea to step from the car. The trial judge's observation that persons who make faces at police officers bear watching is too generalized a reason to conclude that Warren's subjective apprehension was reasonable. In *Cooper v. State*, 584 So. 2d 1124 (Fla. Dist. Ct. App. 1991), a Florida case with similar facts, the appellate court found the evidence did not support the officer's claim he feared for his safety. There, a passenger seated in the back seat of an automobile stopped during a routine traffic check had been " 'bouncing back and forth from the front to the back.' " *Id.* at 1125. Although the arresting officer had no reason to think the passenger might possess a weapon, he had the passenger step out of the vehicle. The appellate court, while noting that the officer testified he feared for his safety, reversed the passenger's conviction for possession of cocaine as a result of the traffic stop, explaining:

> [I]t is incumbent upon a reviewing court to examine the facts — aside from such statement — in the light of a citizen's constitutional protection. We are less likely to lose such protection by cataclysm as we are by erosion in a case by case progression.

*Id.* at 1125-26. Clearly, the facts presented to this Court do not indicate that the officer could have reasonably feared for his safety.

The intrusion on Bethea's rights was not *de minimus*. The majority, without discussion, characterizes the activity as "no more than a mere inconvenience" to the passenger. But, as Justice Stevens points out in his dissent in *Mimms*, the millions of traffic stops occurring each year are not fungible:

> Nor is it universally true that the [occupant's] interest in remaining in the car is negligible. A woman stopped at night may fear for her own safety; a person in poor health may object to standing in the cold or rain; another who left home in haste to drive children or spouse to school or to the train may not be fully dressed; an elderly driver who presents no possible threat of violence may regard the police command as nothing more than an arrogant and unnecessary display of authority.

*Mimms*, 434 U.S. at 120-21 (Stevens, J., dissenting).

Leaving to the unfettered discretion of the police officer the decision whether a passenger must exit a vehicle exposes the authority to the precise abuse anticipated by Justice Stevens in his dissent to *Mimms*.

> Some citizens will be subjected to this minor indignity while others — perhaps those with more expensive cars, or different bumper stickers, or different — colored skin — may escape it entirely.

*Id.* at 122 (Stevens, J., dissenting). The majority gives only lip service to the potential for abuse of authority by qualifying its holding to provide that "[w]hether the actions of the officer are reasonable depends on the facts and circumstances of each case." It is apparent from the majority's analysis that a police officer's unsupported subjective belief that he or she may be in danger during the course of a routine traffic stop will validate an order such as that given in this case. The majority simply leaves open an empty promise that a passenger's expectation of privacy might, under some undefined set of circumstances, outweigh society's interest in the safety of its officers and the enforcement of its laws.

Finally, Warren did not act upon a reasonable suspicion that Bethea had committed, was committing, was about to commit a felony or criminally possessed a concealed weapon. He justifies his exercise of authority to order Bethea out of the vehicle on the antics that Bethea engaged in while he was trying to take Bethea's photograph during an unspecified police operation designed to photograph citizens in the neighborhood. Warren improperly elevated his intrusion upon Bethea beyond the incidental restraint imposed by the traffic stop.[1] Indeed, by permitting Warren to order the removal of a *passenger* for the most routine of traffic stops, the majority ignores the implication of the Supreme Court's own disclaimer in *Mimms* that "we do not hold today that 'whenever an officer has an occasion to speak with the driver of a vehicle, [the officer] may also order the driver out of the car.'" 434 U.S. at 111 n.6. One of the most fundamental Fourth Amendment principles requires that, "in justifying a particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Lansdown v. Commonwealth*, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)), *cert. denied*, 465 U.S. 1104 (1984). The facts do not create a reasonable suspicion that Bethea had committed, was committing, or was about to commit a felony.

In addition, "the officer's action [must be] reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. If the officer's testimony is believed, Bethea's antics were not the justification for the police stopping the automobile. The occupants of the automobile were not suspects of any reported crime. *See Harris v. Commonwealth*, 9 Va. App. 355, 388 S.E.2d 280 (1990), *rev'd on other grounds*, 241 Va. 146, 400 S.E.2d 191 (1991). The officers stopped the automobile because it did not display in its front window a city decal. There is no suggestion that the driver was considered to be a

---

[1] I do not address whether the police would be warranted in removing the passenger from the automobile if necessary to effectuate a custodial arrest of the driver or accomplish a search of the automobile incident to an arrest under *New York v. Belton*, 453 U.S. 454 (1981). The driver's failure to display a city automobile license was a violation of City of Richmond Code § 28-333 (1979). This violation can result, at most, in a $15 fine and is not designated by ordinance to be a misdemeanor. City of Richmond Code § 28-334; *see also* Code § 46.2-752. Accordingly, this case does not involve a search incident to arrest based on a misdemeanor committed in an officer's presence.

threat to the officers' safety. Paulus testified that he asked the driver to exit the automobile and stand on the sidewalk only in order to give Paulus protection from the traffic flow.

"In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference." *Brown v. Texas*, 443 U.S. 47, 52 (1979). This principle holds true for passengers in cars stopped for routine traffic infractions. *Accord Becker*, 458 N.W.2d at 607. Moreover, a citizen's right to privacy is not subject to intrusion whenever a police officer or a judge deems the intrusion to be "no more than a mere inconvenience." Bethea's right to personal security and privacy shielded him from the intrusion of being ordered out of the car. "[E]ach individual is 'clothed with constitutional protection against an unreasonable . . . seizure,' which may not be denied by the individual's 'mere propinquity to others independently suspected of criminal activity.'" *State v. Damm*, 787 P.2d 1185, 1189 (Kan. 1990)(quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). Indeed, the officer did more than order Bethea to exit the car. The officer "took him in position" at the front of the automobile and further exacerbated the intrusion by restricting Bethea's movement to the position he was required to assume at the side of the automobile.

Obviously, the Commonwealth has a legitimate and weighty interest in the personal safety of police officers who become involved in traffic stops. This case, however, does not involve a reasonable suspicion of danger to the officer's personal safety. Rather, the majority sanctions an intrusive police practice that allows a passenger's "reasonable expectation of privacy [to be] subject to arbitrary invasion solely at the unfettered discretion of officers in the field." *Brown*, 443 U.S. at 51. "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.'" *Davis v. Mississippi*, 394 U.S. 721, 726-27 (1969). Because *Mimms* allows officers to require only drivers to exit from a vehicle in a routine traffic stop and because there was an absence of reasonable suspicion of criminal activity or reasonable suspicion of personal danger to the officer justifying the order that Bethea exit the vehicle, I would reverse the conviction. The only evidence supporting the

conviction was a product of the unlawful detention of Bethea and should have been suppressed. *Wong Sun v. United States*, 371 U.S. 471 (1963).