GEORGE BETHEA, JR.

v.

COMMONWEALTH OF VIRGINIA

Record No. 921005

April 16, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ., and
Cochran, Retired Justice.

*Jody Ann Jacobson, Assistant Public Defender (David J. Johnson, Public Defender*, on brief), for appellant.
*Marla Lynn .Graff, Assistant Attorney General (Stephen D. Rosenthal, Attorney General*, on brief), for appellee.

JUSTICE LACY delivered the opinion of Court.

In this case we consider whether a police officer violated the Fourth Amendment rights of a passenger in a motor vehicle when the officer requested the passenger to get out of the vehicle during a lawful traffic stop.

On August 13, 1988, George Bethea, Jr., was riding in a vehicle operated by Tony Dodson. Dodson was driving south in the left-hand lane of Commerce Road in the City of Richmond. Sergeants Marvin T. Paulus and Harry F. Warren of the Richmond Police Department also were driving south in the same area of Commerce Road. The area was a known high-crime area, and the officers were on assignment, taking pictures for potential identification purposes of anyone who drew their ''attention for any unusual circumstances.''

The officers pulled alongside the passenger side of Dodson's vehicle. Observing Bethea in the front passenger seat ''making faces'', ''moving his hands'', and ''waving'' at the officers, they took pictures of his behavior. Warren, a 22-year veteran of the police department, testified that he had never seen similar behavior and that it had ''startled'' and ''scared'' him. The officers then

observed that the Dodson vehicle had no City of Richmond registration decal and stopped the car for that reason.

At Paulus's request Dodson got out of the car. Warren went to Bethea's side of the car and asked Bethea to "please step out of the car" because he was concerned that Bethea might have had weapons in the car. When Bethea stepped out, Warren conducted a visual check and determined that Bethea was not armed. Warren directed Bethea to move to the front of the car and then asked the passenger in the back seat, Walter Robinson, to step out of the car as well. Warren testified that he felt safer once Bethea was outside the car.

A third policeman, Officer Duncan A. Pence, arrived on the scene, bringing Paulus the summons for the decal violation. Pence looked into the car and noticed loose grains of rice on the front floorboard. Pence testified that, based on his knowledge of drug distribution practices, he knew that rice is often used to keep powdered heroin and cocaine from absorbing moisture. Pence observed Bethea jumping on and off the front of the car, and repeatedly putting his hand in and around the waistband of his shorts. Pence approached Bethea and asked him to take his hands away from his waist. Pence told Bethea that he was going to pat down Bethea's waist area to check for weapons. As Pence pulled Bethea away from the car to begin the frisk, a plastic bag containing rice and several packets of cocaine fell from the left leg of Bethea's shorts.

Bethea was charged with possession of cocaine with intent to distribute. Code § 18.2-248. Bethea moved to suppress the cocaine from evidence, alleging that Warren violated his Fourth Amendment rights when he asked Bethea to get out of the car. Specifically, Bethea charged that Warren did not have sufficient cause to justify that request. The trial court denied the motion.

On March 10, 1989, at a bench trial, the court convicted Bethea of the charge against him and sentenced him to 15 years' imprisonment, with seven years' suspended. On April 16, 1991, a panel of the Court of Appeals reversed Bethea's conviction, based on its finding that Warren violated Bethea's Fourth Amendment rights when he asked Bethea to get out of the car. *Bethea* v. *Commonwealth*, 12 Va. App. 303, 404 S.E.2d 65 (1991).

In a rehearing en banc, however, the Court of Appeals reversed the panel decision and affirmed the conviction. *Bethea* v. *Commonwealth*, 14 Va. App. 474, 419 S.E.2d 249 (1992). We awarded Bethea this appeal.

In reaching its decision, the Court of Appeals adopted the rationale of the United States Supreme Court in *Pennsylvania* v. *Mimms*, 434 U.S. 106 (1977). In that case, the Supreme Court found that the intrusion on a driver's personal liberty by an officer's request to get out of a vehicle is *de minimis* when balanced against the "legitimate and weighty" interest of protecting the safety of policemen. *Id.* at 110. Bethea contends that *Mimms* is not applicable here because it involved the Fourth Amendment interests of a *driver*, not a passenger, and that the Supreme Court concluded that the intrusion was *de minimis* because the driver's personal liberty interest was already compromised by the valid stop of the vehicle.

The Court of Appeals, in applying *Mimms* to this case, concluded that "the principles upon which [*Mimms*] is based logically extend to encompass a passenger in a lawfully detained vehicle," and, after citing both federal and state cases, observed that state courts have "consistently held" that asking a passenger to get out of the car "is consonant with fourth amendment protections." *Bethea*, 14 Va. App. at 476, 419 S.E.2d at 251. Initially, we note that the Supreme Court specifically limited its holding in *Mimms* to circumstances in which a police officer orders the driver to get out of a vehicle after the vehicle has been lawfully stopped. *Mimms*, 434 U.S. at 111 n.6. Further, our review of the cases cited by the Court of Appeals shows that the *Mimms* analysis often was not specifically addressed, *see Foley* v. *Connelie*, 435 U.S. 291, 297-98 (1978); *U.S.* v. *Taylor*, 857 F.2d 210, 214 (4th Cir. 1988) and that state courts have not uniformly adopted the *Mimms* rationale when considering the Fourth Amendment rights of passengers in vehicles, *compare, e.g., State* v. *Becker*, 485 N.W.2d 604, 607 (Iowa 1990) *with State* v. *Landry*, 588 So.2d 345, 346-47 (La. 1991).

Nevertheless, we need not determine whether the *de minimis* rationale utilized in *Mimms* is applicable to a passenger in a vehicle when the initial vehicle stop is predicated solely on matters pertaining to the driver. The facts of this case only require the application of the more general principle that Fourth Amendment interests are not violated when a police officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Lansdown* v. *Commonwealth*, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983), *cert. denied*, 465 U.S. 1104 (1984) (quoting *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968)).

■ The totality of the circumstances we consider here, *Lansdown*, 226 Va. at 212, 308 S.E.2d at 112, included a traffic stop in a high-crime area; similar traffic stops by the same officers two days earlier in the same neighborhood where weapons were discovered in a car; Bethea's actions immediately prior to the stop; Warren's 22 years of experience and his statements that Bethea's actions "startled" and "scared" him; and Warren's concern that Bethea might have weapons in the car. These circumstances constitute "specific and articulable facts" which show that Warren was reasonably concerned for his safety and believed that Bethea might have had access to weapons with which to assault him. These facts justified the intrusion on Bethea's Fourth Amendment rights that occurred when Warren asked him to get out of the car.

The fact that Warren did not immediately pat down or frisk Bethea does not belie Warren's concern for his own safety, as Bethea contends. Warren stated that he felt safer with Bethea outside the vehicle, not only because of Bethea's behavior, but also because of his concern that there might be weapons in the car.

For these reasons, we hold that Warren did not violate Bethea's Fourth Amendment rights when he asked Bethea to get out of the vehicle. Therefore, we will affirm the judgment of the Court of Appeals.

*Affirmed.*

JUSTICE HASSELL, dissenting.

The majority, applying the totality of circumstances test that we approved in *Lansdown* v. *Commonwealth*, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983), states:

The totality of the circumstances we consider here . . . included a traffic stop in a high-crime area; similar traffic stops two days earlier in the same neighborhood in which weapons were discovered in a car; Bethea's actions immediately prior to the stop; Warren's 22 years of experience and his statements that Bethea's actions "startled" and "scared" him; and Warren's concern that Bethea might have weapons in the car. These circumstances constitute "specific and articulable facts" which show that Warren was reasonably concerned for his

safety and believed that Bethea might have had access to weapons with which to assault him. These facts justified the intrusion on Bethea's Fourth Amendment rights that occurred when Warren asked him to get out of the car.

I disagree with the majority's holding and logic for several reasons. I do not believe that it is the law in this Commonwealth, or in this nation, that one's Fourth Amendment rights are lessened simply because one happens to live or travel in a high-crime area. Certainly, the Fourth Amendment does not accord a greater degree of protection to people who do not live in impoverished communities or neighborhoods that experience high crime rates.

Furthermore, I simply do not agree with the majority's holding that the police officer was justified in searching Bethea because of concern for the police officers' safety. My review of the record reveals that after the car stopped, Sergeant Paulus walked to the driver's window and asked the driver, Tony Dodson, to get out of the car and stand on the sidewalk. Paulus testified that he asked Dodson to alight from the car in order that he "could get out of the traffic" while talking to Dodson. Officer Warren had positioned himself on the car's passenger side. When he approached the car, Bethea did not say anything, nor did he make any threats or take any provocative action.

Approximately 30 to 40 minutes lapsed between the time the car was stopped and the time Bethea was searched. In fact, Bethea was not searched until Officer Pence arrived on the scene, looked in the car, and saw rice in the front passenger seat and on the floorboard.

It is patently clear to me that the sole reason that Officer Pence searched Bethea was because Pence saw the rice on the floor of the car and, therefore, he thought that Bethea might have illegal drugs in his possession. Officer Pence gave the following testimony:

Q: Please relate to the Court your observations?

A: At the time that I pulled up behind the 473 unit, I observed three males standing on the curb beside a parked vehicle there. At that time I walked up to help with anything I could. I saw that there was rice in . . . the front passenger seat, and in the floor board, and I just walked back and stood at the rear of the car.

THE COURT: What is the siginificance [sic] of rice in the front seat?

THE WITNESS: In my experience as a police officer and from talking from other officers, and from my experience as a police officer, I have learned that rice is sometimes used to keep heroin and cocaine dry before it is distributed.

THE COURT: All right.

A: At this particular time, I was standing at the rear of the car, just standing by, when I noticed the defendant had his right hand on his waist line and appeared to be adjusting something. He then grabbed his waist line and began jumping up on the rear of the vehicle, still holding on to his waist and appeared to be adjusting something within.

I started to look at him, he jumped back down off the car still holding his waist line with his right hand. As he jumped down off the car, I looked at him even more. As he turned away from me towards the car, I couldn't see his hands at that time. I could see his elbows. I could see his arms moving. At that time I asked him to take his hands away from his waist for my own protection. I told him that I was going to pat him down in the area that he kept moving with his hands for my own protection to make sure he didn't have a gun. He was leaning with his mid-section up against the car at the time. I pulled him away from the car to pat that area down, and when I did, he had white short pants on, and from his left leg pants a plastic bag fell to the ground. It contained rice and several packets of white powdery substance, which at the time I believed to be cocaine.

Had the officers truly been concerned with their safety, they would have frisked Bethea immediately when he got out of the car.

I believe that Warren's statements that Bethea's actions "startled" and "scared" him are merely incredulous. It is of significance to note that when Dodson was removed from the car, the police officers immediately searched him for weapons. Had the officers been "startled" or "scared," they would have also searched Bethea immediately.

I am ever mindful of the need for law enforcement officers to protect themselves from danger. However, this need cannot and does not confer upon police officers an unfettered right to search citizens. As the Supreme Court stated in *Terry* v. *Ohio*, 392 U.S. 1 (1968), the police officers' right to conduct a search in these circumstances is limited:

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Id.* at 24. Here, there is no evidence which indicates that the officers were concerned with anything other than searching Bethea to discern whether he possessed illegal drugs. Accordingly, I dissent.