COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Coleman and Bray
Argued at Norfolk, Virginia


JOSE MARTINEZ
                                        MEMORANDUM OPINION[*] BY
v.          Record No. 2762-95-1        JUDGE RICHARD S. BRAY
                                             JULY 16, 1996
COMMONWEALTH OF VIRGINIA

              FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                         Randolph T. West, Judge

         George B. Pavek, III, for appellant.

         Richard B. Smith, Assistant Attorney General
         (James S. Gilmore, III, Attorney General, on
         brief), for appellee.


     Jose Martinez (defendant) entered pleas of guilty to

possession of cocaine with intent to distribute and a related

firearm offense, reserving his right to appeal the denial of an

earlier motion to suppress the substantive evidence of these

offenses.  Defendant now pursues such appeal, arguing that the

trial court erroneously admitted evidence resulting from an

unlawful seizure.  We disagree and affirm the convictions.

     The parties are fully conversant with the record in this

case, and we recite only those facts necessary to a disposition

of this appeal.

     Upon review from a trial court's denial of a motion to

suppress, we consider the evidence in the light most favorable to

the prevailing party below, the Commonwealth in this instance,

_____

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

granting to it "all reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991); Reynolds v. Commonwealth, 9 Va. App. 430, 436, 388 S.E.2d 659, 663 (1990). The factual findings of the trial court will not be disturbed unless "plainly wrong," Grimstead, 12 Va. App. at 1067, 407 S.E.2d at 48, and the burden is upon the appellant to show that the denial constituted reversible error. Reynolds, 9 Va. App. at 436, 388 S.E.2d at 663. However, in accord with Ornelas v. United States, 517 U.S. ___ (1996), we conduct an "independent appellate review of [the] ultimate determinations of reasonable suspicion and probable cause . . . ." Id. at ___.

The record discloses that, on April 24, 1993, Newport News Police Officers Adrien Schraudt and Bryan Haas, while on routine patrol "in a high crime, high drug area," observed a Ford Taurus "rental vehicle" traveling in the wrong direction on a one way street. After stopping the Taurus, both officers approached, and Haas asked the driver, "Noo Noo" Dupree, for his driver's license and automobile registration certificate. Haas recalled that Dupree "stuttered a little bit" and appeared "jittery." The defendant, the front seat passenger, seemed similarly "nervous." After Dupree provided the requested documents, including the rental agreement, Haas advised Dupree that he was issuing a summons for the traffic violation, and the officers returned to the police vehicle.

While preparing the summons, the officers learned that the Taurus had been rented at Norfolk International Airport. Officer Schraudt testified that a recent FBI bulletin advised that "major drug gangs were renting . . . Ford Taurus vehicles . . . [and] run[ning] drugs from Norfolk to Williamsburg . . . ." Schraudt then noted that Dupree and defendant "were both looking at each other, . . . looking around, . . . looking back toward [their] vehicle, talking to each other, [and] looking over their shoulders . . . constantly" and advised Haas that "for [their] safety, it would be best to take Mr. Dupree out of the [Taurus] and pat him down, [to] make sure he didn't have any kind of weapons on him."

Haas instructed Dupree to exit the Taurus, "patted him down for weapons" and, finding none, placed him in the rear seat of the police car. Meanwhile, Schraudt observed defendant, still seated in the Taurus, "constantly looking back at [them]. At one point, [Schraudt] didn't even see [defendant's] head. [Defendant] kept bending over [as if] he was reaching down, [while] looking back . . . ." Based on his observations, Schraudt "became . . . very nervous," and told Haas that he "wanted to take the passenger out of the [Taurus], also, for . . . safety reasons." As Haas "covered" him, Schraudt "asked [defendant] if he would step out" and opened the door. As defendant exited, it appeared that "he was going down toward his shirt area" with his right hand, and Schraudt instructed him "not

- 3 -

to touch anything, not to move, keep his hands where [Schraudt] could see them[,] and place his hands up on the car." When Schraudt inquired if defendant had any weapons on his person, defendant motioned toward his waistband, acknowledged that he had a gun, and Schraudt removed a loaded "Cobray Mach 11" firearm.

Defendant was then arrested for possession of a concealed weapon and escorted to the police car, where he volunteered, "I also have drugs on me. Do you want those, too?" Schraudt responded affirmatively, "reached into [defendant's] right front pocket and . . . pulled out . . . [several] plastic bags" containing marijuana and cocaine.

Defendant concedes that the initial stop of the Taurus was properly supported by the traffic violation, thereby subjecting the occupants of the vehicle to the related seizure. However, he contends that the officer's command to exit the vehicle constituted a further, unreasonable seizure of his person in violation of the Fourth Amendment.

"[T]he fourth amendment does not proscribe all searches and seizures, only those that are 'unreasonable.'" Thompson v. Commonwealth, 16 Va. App. 478, 481, 431 S.E.2d 72, 74 (1993) (quoting Terry v. Ohio, 392 U.S. 1, 9 (1968)). "Whether a search or seizure is unreasonable is determined by balancing the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law

enforcement officers."  Id.

"The state's interest in the personal safety of its police officers is "'legitimate and weighty.'"  Bethea v. Commonwealth, 14 Va. App. 474, 478, 419 S.E.2d 249, 251 (1992) (quoting Pennsylvania v. Mimms, 434 U.S. 106, 110 (1977)), aff'd on other grounds, 245 Va. 416, 429 S.E.2d 211 (1993).

> By requiring a passenger to exit a vehicle, a police officer who, in a traffic stop, is involved with unknown individuals, is able to establish 'a face-to-face confrontation [which] diminishes the possibility, otherwise substantial, that [the occupants of the vehicle] can make unobserved movements [which], in turn, reduces the likelihood that the officer will be the victim of an assault.'

Id. at 478, 419 S.E.2d at 251-52 (quoting Mimms, 434 U.S. at 110).  Thus, "Fourth Amendment interests are not violated when a police officer can 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"  Bethea v. Commonwealth, 245 Va. 416, 419, 429 S.E.2d 211, 213 (1993) (quoting Lansdown v. Commonwealth, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983), cert. denied, 465 U.S. 1104 (1984)).

Here, both Dupree and defendant appeared nervous, "looking over their shoulders back toward [the officers] constantly." This behavior, combined with the "high crime, high drug area" of the stop and official information of "major drug gangs . . . renting . . . Ford Taurus vehicles" for the transportation of narcotics from Norfolk to Williamsburg, prompted reasonable

safety concerns which justified the removal of Dupree from the vehicle.  See Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987).  Defendant's subsequent exaggerated behavior while alone in the Taurus provided additional reasonable suspicion that he, also, posed a threat to the officers and supported the limited intrusion which attended disclosure of the offending contraband.

Accordingly, we affirm the convictions.

Affirmed.