ANNUNZIATA, Judge, with wh,om BENTON and ELDER, JJ.,
join, dissenting.
The majority holds that police officers may seize a person whom they have no reasonable, articulable basis to suspect of criminal activity. Because I believe this holding is not supported by Fourth Amendment law, I respectfully dissent.
Investigator Thomas observed two men conduct drug transactions, then join a group of eight men, including appellant, standing on a sidewalk in front of a reputed crack house. Thomas did not see appellant do anything “except stand there.” At Thomas’ direction, Officer Duff moved into the area to apprehend the men involved in the drug transactions. Duff wanted to “secure the two target suspects and then make the scene secure, either by having people leave or making sure that there were no weapons with the people that decided to stay.” As he approached the scene, Duff ordered the individuals on the sidewalk, including appellant, to lie on the ground in a prone position and extend their arms. After appellant assumed a prone position, but kept his hands under his torso, Duff conducted a pat-down search and discovered the cocaine used to support appellant’s conviction.
“[PJeople are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks.” Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In holding that no reasonable suspicion or probable cause was required to seize appellant, the majority applies the principle that, “[wjhether a seizure is unreasonable is determined by balancing the individual’s right to be free from arbitrary government intrusions against society’s countervailing interest in preventing or detecting crime and in protecting its law enforcement officers.” Bethea v. Common *39 wealth, 14 Va.App. 474, 476, 419 S.E.2d 249, 250 (1992) (en banc) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)), aff’d on other grounds, 245 Va. 416, 429 S.E.2d 211 (1993).
“For all but ... narrowly defined intrusions, the requisite ‘balancing’ has been performed in centuries of precedent and is embodied in the principle that seizures are ‘reasonable’ only if supported by probable cause.” Dunaway v. New York, 442 U.S. 200, 214, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). The reasonableness of seizures less intrusive than a traditional arrest, however,
involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual’s reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society’s legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.
Brown v. Texas, 443 U.S. 47, 50-51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (citations omitted); see also Prouse, 440 U.S. at 654, 99 S.Ct. 1391 (explaining that the balancing test requires either individualized suspicion or other safeguards to limit discretion); Lowe v. Commonwealth, 230 Va. 346, 350, 337 S.E.2d 273, 276 (1985) (citing Brown, 443 U.S. at 50-51, 99 S.Ct. 2637) (explaining Brown standard).
Applying this standard, the Supreme Court of the United States and Virginia courts have repeatedly held that a constitutionally valid seizure less intrusive than an arrest requires either (1) reasonable, articulable suspicion that a crime is being or has been committed, see, e.g., United States v. *40 Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (explaining that an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), “requires ‘some minimum level of objective justification’ ” (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984))); Brown, 443 U.S. at 51, 99 S.Ct. at 2641 (holding that stop of pedestrian requires reasonable, articulable suspicion of criminal activity); Prouse, 440 U.S. at 663, 99 S.Ct. 1391 (holding that stop of automobile requires reasonable, articulable suspicion of criminal activity); Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (citing Brown, 443 U.S. at 51, 99 S.Ct. 2637) (holding that stop of automobile requires reasonable, articulable suspicion of criminal activity); Simmons v. Commonwealth, 217 Va. 552, 554, 231 S.E.2d 218, 220 (1977) (citing Terry, 392 U.S. at 27, 88 S.Ct. 1868) (holding that stop of pedestrian must be supported by reasonable, articulable facts of criminal activity); or (2) an explicit, neutral plan limiting the discretion of the officers in the field. See, e.g., Michigan Dep’t of State Police v. Sitz, 496 U.S. 444, 453, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (approving stop at traffic checkpoint selected pursuant to guidelines and stopping every vehicle); United States v. Martinez-Fuerte, 428 U.S. 543, 559, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (approving permanent immigration checkpoint stops involving limited discretionary enforcement activity); Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 658-59 (1989) (explaining that roadblock stops “must be undertaken pursuant to an explicit plan or practice which uses neutral criteria and limits the discretion of the officers conducting the roadblock”); Lowe, 230 Va. at 352, 337 S.E.2d at 277 (approving roadblock stop employing neutral criteria and limiting officers’ discretion).
Prior to today, the Supreme Court of the United States and Virginia courts have approved seizures without any objective, particularized suspicion of wrongdoing in only two contexts. First, in Michigan v. Summers, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Court held that police could, without objective suspicion, detain the occupant of a house *41 during a search conducted pursuant to a valid warrant. See also Allen v. Commonwealth, 3 Va.App. 657, 661-62, 353 S.E.2d 162, 165 (1987) (applying Summers to substantially identical facts). The Court explained that the state’s interest in officer safety outweighed the “incremental intrusion on personal liberty [caused by the defendant’s detention] when the search of a home has been authorized by a valid warrant.” Summers, 452 U.S. at 703, 101 S.Ct. 2587.
Second, courts have held that police may, without objective suspicion, order occupants of a lawfully stopped car to perform certain actions. In Pennsylvania v. Mimms, 434 U.S. 106, 110-11, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam), the Court held that police may order the driver of a lawfully stopped car out of the vehicle. The Court reasoned that the important value of officer safety outweighed the “mere inconvenience” to the driver, an “additional intrusion [which] can only be described as de minimis.” Id. at 111, 98 S.Ct. 330. The Court explained as follows: “The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver’s seat of his car or standing alongside it.” Id. In a series of decisions, this Court has applied Mimms to similar orders by police, including orders for passengers to step out of stopped vehicles. See Stanley v. Commonwealth, 16 Va.App. 873, 875, 433 S.E.2d 512, 513 (1993) (citing, inter alia, Mimms, 434 U.S. at 111, 98 S.Ct. 330); Thompson v. Commonwealth, 16 Va.App. 478, 481, 431 S.E.2d 72, 74 (1993) (citing Hatcher v. Commonwealth, 14 Va.App. 487, 491-92, 419 S.E.2d 256, 258-59 (1992)); Hatcher, 14 Va.App. at 492, 419 S.E.2d at 259; Bethea, 14 Va.App. at 478, 419 S.E.2d at 251-52.
Finally, in Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 884, 137 L.Ed.2d 41 (1997), the United States Supreme Court extended the Mimms rule to passengers. The Court reasoned that, “as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle.” Wilson, 519 U.S. 408, 117 S.Ct. at 886. The Court held that the state’s weighty interest in preventing violence to police outweighed the minimal “additional intrusion” on a passenger’s rights. Id.
*42 In the Summers and Wilson lines of cases, the detention of the defendant represented an incremental, additional intrusion following an antecedent search or seizure based on probable cause or reasonable suspicion, such as the execution of a valid search warrant or lawful stop. The first facet of the detentions approved in the Summers and Wilson lines of cases is that the challenged seizure rests on an antecedent determination of probable cause or reasonable suspicion. See Wilson, 519 U.S. 408, 117 S.Ct. at 884 (holding that the Mimms rule “that a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle[ ] extends to passengers as well”); Summers, 452 U.S. at 703, 101 S.Ct. 2587 (“The existence of a search warrant ... provides an objective justification for the detention.”); Mimms, 434 U.S. at 109, 98 S.Ct. 330 (“[W]e ... deal only with the narrow question of whether the order to get out of the car, issued after the driver was lawfully detained, was reasonable and thus permissible under the Fourth Amendment.”); Harris v. Commonwealth, 27 Va.App. 554, 562, 500 S.E.2d 257, 261 (1998) (citing Wilson, 519 U.S. 408, 117 S.Ct. at 886) (“Following a lawful traffic stop, the Fourth Amendment permits the police to order the passengers to get out of the car pending the completion of the stop.”); Stanley, 16 Va.App. at 875, 433 S.E.2d at 513 (citing, inter alia, Mimms, 434 U.S. at 111, 98 S.Ct. 330) (“In the context of the lawful stop of an automobile, the balancing of these interests may permit the police to require both the driver and any passengers to step out of the vehicle.”); Thompson, 16 Va.App. at 481, 431 S.E.2d at 74 (citing Hatcher, 14 Va.App. at 491-92, 419 S.E.2d at 258-59) (“Upon the lawful stop of an automobile, we have recognized that the balancing of these interests may permit the police to require both the driver and any passengers to step out of the vehicle.”); Hatcher, 14 Va.App. at 492, 419 S.E.2d at 259 (“If a driver’s maneuvers give rise to probable cause to believe , that a traffic infraction has occurred, then effecting a brief detention that includes not only the driver and his car but his passengers as well, seems a legitimate law enforcement goal.”); Bethea, 14 Va.App. at 478, 419 S.E.2d at 251-52 *43 (“While Mimms involved the driver of the vehicle, the principles upon which the decision is based logically extend to encompass a passenger in a lawfully detained vehicle.”); see also New York v. Class, 475 U.S. 106, 117-18, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (describing one of the three factors in Summers and Mimms as the existence of “some probable cause focusing suspicion on the individual affected by the search”).[1]
The second facet of the detentions approved in the Summers and Wilson lines of cases is that the seizures at issue were minimal incremental intrusions cumulative to the search or seizure already supported by probable cause or reasonable, articulable suspicion. See Wilson, 519 U.S. 408, 117 S.Ct. at 886 (reasoning that “the additional intrusion on the passenger is minimal”); Summers, 452 U.S. at 703, 101 S.Ct. 2587 (“[T]he detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant.”); Mimms, 434 U.S. at 109, 98 S.Ct. 330 (‘We think this additional intrusion can only be described as de minimis."); Harris, 27 Va.App. at 562, 500 S.E.2d at 261 (“This authority over passengers at a lawful traffic stop is deemed a ‘reasonable’ seizure under the Fourth Amendment because the ‘weighty [public] interest in officer safety’ during traffic stops, which ‘may be dangerous encounters,’ sufficiently *44 outweighs the minimal additional intrusion upon the private interests of passengers, who ‘are already stopped by virtue of the [lawful] stop of the vehicle.’ ” (quoting Wilson, 519 U.S. 408, 117 S.Ct. at 885-86) (alterations in Harris)); Hatcher, 14 Va.App. at 491, 419 S.E.2d at 259 (“Here, appellant was not ordered to exit the vehicle but to remain beside it while Officer Reetz conducted his brief follow-up investigation following his detention of the car and its occupants. As was the case in Mimms, the intrusion on appellant’s privacy rights and freedom of movement was de minimis [sic]____”); Bethea, 14 Va.App. at 478, 419 S.E.2d at 252 (“To comply with the request, the passenger need only exit the vehicle, an act that amounts to no more than a mere inconvenience. Like the driver, the passenger ‘is being asked to expose to view very little more of his person than is already exposed.’ ” (quoting Mimms, 434 U.S. at 111, 98 S.Ct. 330)). In the two cases which did not discuss the minimal, incremental nature of the seizure, the seizure was not challenged by the defendant, and we merely explained the permissibility of the order to exit the vehicle before reversing on other grounds. See Stanley, 16 Va.App. at 875, 433 S.E.2d at 513—14; Thompson, 16 Va.App. at 481, 431 S.E.2d at 74.
In stark contrast, this case has none of the distinguishing features of Wilson, Summers, Mimms, or the Virginia cases applying them. Prior to ordering appellant to the ground, Duff had made no valid, antecedent determination of reasonable suspicion or probable cause with respect to appellant. Instead, as the Commonwealth concedes, the police had no individualized suspicion of appellant whatsoever. In addition, Duffs seizure of appellant was not an additional increment of intrusion incident to an otherwise justified search or seizure of appellant, see Mimms, 434 U.S. at 111, 98 S.Ct. 330, appellant’s home, see Summers, 452 U.S. at 701, 101 S.Ct. 2587, or a vehicle, which incidentally and necessarily intruded on appellant’s mobility. See Wilson, 519 U.S. 408, 117 S.Ct. at 886. Duff’s order to appellant to lie on the ground was the seizure, and it was not conducted as a component part of any legal search or seizure. Finally, Duffs seizure of appellant cannot *45 reasonably be described as “a mere inconvenience,” Mimms, 434 U.S. at 111, 98 S.Ct. 330, “minimal,” Wilson, 519 U.S. 408, 117 S.Ct. at 886, or “de minimis.” Hatcher, 14 Va.App. at 491, 419 S.E.2d at 259. Rather than being ordered to step out of his car or to remain in his house, appellant was ordered to lie face down on the sidewalk with his arms extended from his body. As opposed to the circumstances addressed in Wilson, Summers, and Mimms, Duff did not order appellant to perform a commonplace action like stepping out of his car but instead ordered appellant to submit to complete police control.
Balancing the individual’s right to be free from arbitrary government intrusions against society’s countervailing interest in preventing and detecting crime and in protecting its law enforcement officers, see Brignoni-Ponce, 422 U.S. at 878, 95 S.Ct. 2574, I would hold that Duffs seizure of appellant required reasonable, articulable suspicion of appellant’s involvement in criminal activity. “In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant’s right to personal security and privacy tilts in favor of freedom from police interference.” Brown, 443 U.S. at 52, 99 S.Ct. 2637; see also Moss v. Commonwealth, 7 Va.App. 305, 308, 373 S.E.2d 170, 172 (1988) (citing Brown, 443 U.S. at 52, 99 S.Ct. 2637). The majority’s resolution of the balance in favor of police power violates the “central concern in balancing these competing considerations”: “to assure that an individual’s reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field.” Brown, 443 U.S. at 50-51, 99 S.Ct. 2637 (citing Prouse, 440 U.S. at 654-55, 99 S.Ct. 1391; Brignoni-Ponce, 422 U.S. at 882, 95 S.Ct. 2574). Given the Commonwealth’s concession that Duff did not have reasonable, articulable suspicion to seize appellant, I would hold the seizure unreasonable.
The majority lists several facts in support of the officers’ fears for their safety, including the number of people at the scene, the reputation of the area for violence, and the nature of the crime. These factors, however, are relevant only to a determination of whether a seizure is supported by reason *46 able, articulable suspicion.[2] They are of no consequence here because the majority does not premise its holding on the ground that the officers had reasonable' suspicion to order appellant to lie down. Instead, it holds “[ujnder the reasoning of Summers and Wilson ” that the officers could seize appellant notwithstanding the fact that “[t]he officers lacked reasonable suspicion or probable cause to believe appellant was engaged in criminal activity and did not have an arrest warrant for the two target individuals.”
In his dissent in Wilson, Justice Stevens wrote, “How far this ground-breaking decision will take us, I do not venture to predict. I fear, however, that it may pose a more serious threat to liberty than the Court realizes.” 519 U.S. 408, 117 S.Ct. at 890. Today, the majority takes the step foreseen by Justice Stevens and expands the reasoning of Wilson far beyond its limited context. The majority’s holding that police may seize individuals without reasonable suspicion or probable cause represents a radical departure from well-established Fourth Amendment principles found in the prior decisions of the Supreme Court of the United States as well as the courts of Virginia. Accordingly, I dissent.

. In three cases, Virginia courts have approved police orders for the occupant of a vehicle to perform certain actions on the basis of reasonable, articulable suspicion. See Bethea v. Commonwealth, 245 Va. 416, 419-20, 429 S.E.2d 211, 213 (1993) (criticizing this Court’s Mimms-based reasoning, but approving order to passenger to get out of the vehicle because it was based on reasonable, articulable suspicion); Pryor v. Commonwealth, 17 Va.App. 117, 118-19, 435 S.E.2d 417, 418-19 (1993) (en banc) (reciting facts justifying order for passenger to get out of car, and specifically disavowing reliance on our Bethea and Hatcher line of cases); Woodson v. Commonwealth, 14 Va.App. 787, 792-94, 421 S.E.2d 1, 4-5 (1992) (explaining Bethea analysis, but ultimately "find[ing] that the evidence was sufficient to support a reasonable suspicion that [the defendant] was involved in criminal activity”), aff’d on other grounds, 245 Va. 401, 429 S.E.2d 27 (1993) (holding that defendant was not seized within the meaning of the Fourth Amendment by the police order to place his hands on the steering wheel because he did not comply).

. The majority cites Brown v. Commonwealth, 15 Va.App. 232, 421 S.E.2d 911 (1992), and Logan v. Commonwealth, 19 Va.App. 437, 452 S.E.2d 364 (1994) (en banc), in support of the factors it lists. In Brown, we held that an officer's characterization of the park where the defendant was arrested as an “open drug market” was admissible as evidence of possession of cocaine with intent to distribute, 15 Va.App. at 235, 421 S.E.2d at 913, but parenthetically noted in the footnote cited by the majority that "the defendant's presence in a high crime area, standing alone, does not provide the requisite degree of suspicion to justify an investigatory stop.” Id. at 234 n. 1, 421 S.E.2d at 912 n. 1. In Logan, we held that a broken rear vent car window constituted reasonable, articulable suspicion of criminal activity. Logan, 19 Va.App. at 441-42, 452 S.E.2d at 367-68.