Tuesday          1st
September, 1998.


Christopher John Reittinger,                                    Appellant,

 against      Record No. 0246-97-3
              Circuit Court No. CR96000426-00

Commonwealth of Virginia,                                       Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court


On August 4, 1998 came the appellee, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on July 21, 1998, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on July 21, 1998 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Bumgardner
Argued at Salem, Virginia


CHRISTOPHER JOHN REITTINGER
                                             OPINION BY
v.        Record No. 0246-97-3     JUDGE SAM W. COLEMAN III
                                             JULY 21, 1998
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                  George E. Honts, III, Judge

        Malcolm G. Crawford for appellant.

        Marla Graff Decker, Assistant Attorney
        General (Richard Cullen, Attorney General, on
        brief), for appellee.


     Christopher John Reittinger was convicted in a bench trial
for possession of marijuana.  On appeal, Reittinger contends:
(1) he was "seized" in violation of the Fourth Amendment by the
officer's show of authority in asking for consent to search the
vehicle after having indicated that Reittinger was free to leave,
and (2) the evidence was seized as the result of an illegal frisk
that violated the Fourth Amendment.  We find that the officer's
encounter with Reittinger after concluding the motor vehicle
equipment investigation was consensual in nature and, therefore,
did not implicate the Fourth Amendment.  Assuming, without
deciding, that the officer reasonably suspected from the bulge in
Reittinger's pocket and from Reittinger's conduct that Reittinger
was armed, we find that the officer's frisk violated the Fourth
Amendment because, at the time of the frisk, the officer was not
investigating suspected criminal activity or protecting the

public safety. Accordingly, we hold that the marijuana was seized as the result of an illegal frisk and that the trial court erred by admitting it into evidence.

## I.  BACKGROUND

Late one evening, Rockbridge County Police Officer Hugh Bolen stopped Reittinger's van when Bolen observed it being driven with an inoperable headlight. After giving Reittinger a verbal warning to have the headlight repaired, Bolen told Reittinger he was "free to go." Immediately thereafter, Bolen asked Reittinger if he had contraband, or drugs, or firearms in the vehicle. Reittinger eventually responded "no, that there wasn't anything illegal in the vehicle." Bolen then asked if he could search the vehicle for weapons or drugs. Reittinger "turned around in his seat and looked at his passenger[s] and . . . whispered something." Bolen repeated the question several times. Reittinger remained silent but, eventually, without being requested to do so, exited the vehicle. Bolen testified that he did not have any particular reason to suspect that Reittinger was engaged in criminal activity.

As Reittinger alighted from the vehicle, Bolen observed a bulge in Reittinger's front pocket. Bolen then frisked Reittinger's outer clothing because he felt it was "a safety issue, out there in the dark." Bolen felt a large, hard bulge in Reittinger's pocket, which he believed might have been a weapon. Bolen asked Reittinger what was causing the bulge. Reittinger

did not answer and "tried to cover [the pocket] up." After Bolen told Reittinger, "you need to bring that out of your pocket," Reittinger pulled out a smoking device that contained marijuana residue. Reittinger was charged with possession of marijuana.

At trial, Reittinger filed a motion to suppress the marijuana evidence on the ground that Bolen had seized it in violation of the Fourth Amendment. The trial court ruled that Bolen's requesting consent to search the van immediately after investigating the equipment violation and telling Reittinger he was "free to go" would have led a reasonable person to believe he or she was being further detained and was not free to leave. Thus, the trial court ruled that Bolen had illegally detained Reittinger without a reasonable, articulable suspicion that he was engaged in criminal activity. The trial court found that Reittinger exited the van without being asked to do so, in a rural setting, at night, and after Bolen had asked for permission to search the van. The trial court further found that although Reittinger consented to the search of the van "[i]t is not exactly clear whether [Reittinger] finally consented to [the] search after he exited the van and before the pat down or after the pat down." Thus, the court made no finding of fact that Reittinger had consented to his van being searched when Officer Bolen frisked him for weapons. Based on these findings, the court ruled that, although Bolen unlawfully detained Reittinger after the initial investigation, Bolen articulated a reason to

suspect that Reittinger was armed and dangerous and, thus, that Bolen was justified in frisking Reittinger for the officer's own safety. The court denied Reittinger's motion to suppress and convicted him for possession of marijuana.

## II. ANALYSIS

This appeal raises fundamental questions about the scope of the Fourth Amendment's protection against unreasonable searches and seizures. In resolving the questions presented, we examine: (1) the nature and constitutional dimensions of the encounter from the time Bolen completed the headlight investigation until the frisk and (2) the constitutionality of the frisk.

On appeal, the defendant bears the burden of establishing that the trial court's denial of the motion to suppress was reversible error. See Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139-40 (1994). Whether a "seizure" occurred that implicated the Fourth Amendment and whether a police officer's protective weapons frisk was constitutionally valid involve questions of law and fact and are reviewed de novo on appeal. See McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 691 (1996)). "In performing such analysis, we are bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them. . . ." Id. (citing Ornelas, 517 U.S. at 699).

### A. Encounter After Investigative Traffic Stop

Reittinger contends, and the trial court ruled, that Bolen unlawfully seized Reittinger in violation of the Fourth Amendment by subjecting Reittinger to a "new and unrelated inquiry" immediately following the officer's investigation of the motor vehicle equipment violation. We hold that Bolen's conduct in asking questions and seeking permission to search the van without a reasonable and articulable basis for doing so did not constitute a "seizure."

A person is "seized" under the Fourth Amendment "only if, in view of all of the circumstances surrounding an incident, a reasonable person would have believed that he was not free to leave." Mendenhall v. United States, 446 U.S. 544, 554 (1980). In order for a seizure to occur, a police officer "must restrain a citizen's freedom of movement by the use of physical force or show of authority." Ford v. City of Newport News, 23 Va. App. 137, 142, 474 S.E.2d 848, 850 (1996) (citing California v. Hodari D., 499 U.S. 621 (1991)). A "voluntary or consensual encounter between a police officer and a citizen does not implicate the Fourth Amendment as long as 'a reasonable person would understand that he or she could refuse to cooperate.'" Lawrence v. Commonwealth, 17 Va. App. 140, 144, 435 S.E.2d 591, 594 (1993) (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)). Whether a person is "free to leave" must be measured by an "objective standard -- looking to the reasonable man's interpretation of the conduct in question." Michigan v.

<u>Chesternut</u>, 486 U.S. 567, 574 (1988).

Viewed in the light most favorable to the Commonwealth, <u>Fore v. Commonwealth</u>, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980), the evidence established that Reittinger's encounter with Officer Bolen was consensual from the completion of the defective equipment investigation until the frisk and was not a "seizure" that implicated the Fourth Amendment. After completing the equipment investigation, Bolen admonished Reittinger to have the headlight repaired and told him he was "free to go." At the time, Officer Bolen was not physically restraining Reittinger in any manner and made no show of authority to indicate that Reittinger was not free to leave. Therefore, a reasonable person would have believed that the investigation had ended and that he or she was free to leave. See <u>Wechsler v. Commonwealth</u>, 20 Va. App. 162, 171, 455 S.E.2d 744, 748 (1995).

Officer Bolen's request for permission to search the van after telling Reittinger he was free to leave was not a show of authority that compelled Reittinger to consent to the search or to believe he had no choice but to stay and address Bolen's query. The officer did not draw his weapon, did not physically restrain Reittinger, and did not by show of force or authority restrict Reittinger's freedom of movement or indicate that Reittinger was not free to leave. See <u>Baldwin v. Commonwealth</u>, 243 Va. 191, 199, 413 S.E.2d 645, 649 (1992) (noting that circumstances under which reasonable person may believe he was

not free to leave include, but are not limited to, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled").  Even though an individual may feel some trepidation during a consensual encounter with a police officer and some reluctance or discomfort in walking away from such an encounter, a police officer's conduct does not implicate the Fourth Amendment if the officer merely poses questions to an individual in a public place and the individual chooses to answer them.  See Florida v. Royer, 460 U.S. 491, 497 (1983); Buck v. Commonwealth, 20 Va. App. 298, 301-02, 456 S.E.2d 534, 535 (1995).  Without some indicated restraint, mere questioning by officers when a routine traffic stop is over and its purpose served does not amount to a seizure under the Fourth Amendment.  See United States v. Sullivan, 138 F.3d 126, 131 (4th Cir. 1998).  "As long as the [individual] to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty as would under the [Fourth Amendment] require some particularized and objective justification."  Mendenhall, 446 U.S. at 553-54.

Considering the totality of the circumstances, we hold that as a matter of law a reasonable person would have believed he or she was free to leave and could have declined to stay and answer

- 8 -

Bolen's questions.[1]  Reittinger voluntarily remained at the scene

after Bolen told him he was "free to go."  Reittinger does not

assert he was seized because he involuntarily consented to have

his vehicle searched; he contends he was seized as a result of

the officer's request to search his van after telling him he

could go.  We hold that Bolen did not "seize" Reittinger within

the meaning of the Fourth Amendment merely by asking permission

to search his vehicle.

### B.  Protective Frisk

We next consider the validity of Bolen's protective weapons

frisk of Reittinger.  The Fourth Amendment proscribes

"unreasonable searches and seizures" by the government of its

citizens and their effects.  U.S. Const. amend. IV.  It is well

settled that an officer's protective frisk for weapons is an

intrusion upon an individual's personal privacy and is a

"seizure" that implicates the Fourth Amendment.  See Adams v.

Williams, 407 U.S. 143, 147 n.2 (1972); Toliver v. Commonwealth,

23 Va. App. 34, 36, 473 S.E.2d 722, 724 (1996).  Thus, we must

determine whether Bolen's protective weapons frisk of Reittinger

was reasonable under the circumstances.  See Pennsylvania v.

---

[1]An increasing number of appeals present situations in which police officers routinely ask permission to do drug and weapon searches of motor vehicles following stops for minor traffic infractions.  See, e.g., United States v. Lattimore, 87 F.3d 647 (4th Cir. 1996) (en banc).  Although a police officer's request to search a vehicle immediately following a completed traffic stop bears some degree of compulsion, without more, it is not a "seizure" for Fourth Amendment purposes.

<u>Mimms</u>, 434 U.S. 106, 108-09 (1977) (<u>per</u> <u>curiam</u>) ("The touchstone of [the Court's] analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security.").  A determination as to the reasonableness of a particular police procedure depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers."  <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878 (1975).

In <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), the United States Supreme Court considered "whether it is always unreasonable for a [police officer] to seize a person and subject him to a limited search for weapons unless there is probable cause for arrest." 392 U.S. at 22.  The Court stated that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest."  <u>Id.</u> at 22.  It held that a police officer may lawfully "stop" an individual if the officer possesses a reasonable suspicion, based on specific and articulable facts, that the individual is or is about to be engaged in criminal activity.  <u>Id.</u> at 30.  Further, once the officer has lawfully detained a person for investigation and questioning, "he may conduct a limited pat-down search of the suspect's outer clothing to search for weapons if the officer reasonably believes, based on specific and articulable facts,

that the suspect might be armed and dangerous."  Phillips v.
Commonwealth, 17 Va. App. 27, 30, 434 S.E.2d 918, 920 (1993)
(citing Terry, 392 U.S. at 30).  Accordingly, under Terry, a
police officer may conduct a protective frisk if he or she can
"point to specific and articulable facts which, taken together
with rational inferences from those facts," reasonably lead the
officer to conclude:  (1) that "criminal activity may be afoot,"
and (2) that the suspect "may be presently armed and dangerous."
 Landsdown v. Commonwealth, 236 Va. 204, 212, 308 S.E.2d 106, 112
(1983) (quoting Terry, 392 U.S. at 21, 30).

Justice Harlan emphasized in his concurring opinion in Terry
that the Fourth Amendment generally does not permit a police
officer to frisk an individual based solely upon the officer's
reasonable suspicion that the individual is armed and dangerous
but without a legitimate reason to suspect criminal activity.  He
stated:

> [I]f the frisk is justified in order to
> protect the officer during an encounter with
> a citizen, the officer must first have
> constitutional grounds to insist on an
> encounter, to make a forcible stop.  Any
> person, including a [police officer], is at
> liberty to avoid a person he considers
> dangerous.  If and when a [police officer]
> has a right instead to disarm such a person
> for his own protection, he must first have a
> right not to avoid him but to be in his
> presence.  That right must be more than the
> liberty (again, possessed by every citizen)
> to address questions to other persons, for
> ordinarily the person addressed has an equal
> right to ignore his interrogator and walk
> away; he certainly need not submit to a frisk
> for the questioner's protection.  I would
> make it perfectly clear that the right to

> frisk . . . depends upon the reasonableness
> of a forcible stop to investigate suspected
> crime.

<u>Terry</u>, 392 U.S. at 32-33 (Harlan, J., concurring) (second emphasis added). <u>Accord</u> <u>Adams</u>, 407 U.S. at 146 ("So long as the officer is <u>entitled</u> to make a <u>forcible</u> stop, <u>and</u> has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." (emphasis added) (footnote omitted)).

As Justice Harlan's concurring opinion clarifies, the general purpose of a protective frisk is to facilitate the police officer's limited investigation of suspected criminal activity without fear or threat of violent reprisal by the suspect. <u>See</u> <u>Adams</u>, 407 U.S. at 146. It would be unreasonable to allow an officer to conduct a protective frisk where the officer unnecessarily places himself or herself in a precarious situation by initiating a baseless encounter with an individual whom he or she considers armed and dangerous. <u>See</u> Wayne R. LaFave, <u>Search and Seizure</u> § 9.5(a) (2d ed. 1987). Thus, under the Fourth Amendment, the general rule is that a police officer may not approach and frisk an individual whom he or she reasonably believes may be armed and dangerous if the officer has no reason to suspect that the individual is also engaged in criminal activity.[2] <u>See</u> <u>Toliver</u>, 23 Va. App. at 36-37, 473 S.E.2d at 724;

---

[2] As one court has colorfully stated the rule: "No matter how appealing the cart may be, the horse must precede it." <u>Gomez v. United States</u>, 597 A.2d 884, 891 (D.C. App. 1991).

<u>Commonwealth v. Couture</u>, 552 N.E.2d 538, 540-41 (Mass. 1990);
<u>State v. Giltner</u>, 537 P.2d 14, 17 (Haw. 1975); <u>People v. Batino</u>,
367 N.Y.S.2d 784, 785 (1975).

Similarly, where an officer lawfully "stops" an individual,
and through investigation dispels any reasonable suspicion that
the individual may be engaged in criminal activity, the officer
may not thereafter conduct a protective frisk for weapons, even
if the officer reasonably suspects that the individual is
presently armed and dangerous, unless subsequent circumstances
renew the officer's reasonable belief that criminal activity may
be afoot.  See <u>United States v. Thomas</u>, 863 F.2d 622, 628 (9th
Cir. 1988); <u>State v. White</u>, 856 P.2d 656, 662 (Utah Ct. App.
1993); <u>Coleman v. United States</u>, 337 A.2d 767, 771-72 (D.C. App.
1975); <u>see also</u> LaFave, <u>supra</u>, § 9.5(a) at 247.  In such a
situation, the police officer may allay any legitimate concern
for his or her safety by discontinuing the encounter with the
individual.  But, an officer may not justify a protective search
by using legitimate safety concerns to bootstrap his or her lack
of sufficient suspicion of criminal activity.  See <u>id.</u>  Under the
general rule of <u>Terry</u>, if the officer's justification to stop or
detain a person dissipates, then a weapons frisk is
constitutionally impermissible.[3]

---

[3]The decision in <u>United States v. Thomas</u> is demonstrative.
There, a police officer, after receiving a report describing two
men suspected of passing counterfeit money, stopped a vehicle in
which two possible suspects were riding.  <u>Thomas</u>, 863 F.2d at
624.  After stopping the vehicle, the officer determined that the
defendant "did not match the description of either of the

In recent years, Virginia courts have recognized that in limited circumstances a police officer may lawfully frisk an individual whom he or she reasonably believes may be armed without a particularized suspicion that the subject of the frisk may be involved in any criminal activity. The Virginia Supreme Court upheld a protective frisk where the police officer lawfully "stopped" a vehicle suspecting that the operator was engaged in criminal activity and frisked a passenger whom he reasonably believed to be armed and dangerous. See Bethea v. Commonwealth, 245 Va. 416, 420, 429 S.E.2d 211, 213 (1993) (citing Pennsylvania v. Mimms, 434 U.S. 106 (1977)).[4] In Moore v. Commonwealth, 25

(..continued)
suspects." Id. at 628. After questioning the defendant as to why he was in the area and checking his identification, the officer asked Thomas whether he was carrying a weapon. When Thomas did not respond, the officer frisked Thomas, recovered a handgun, and arrested him for carrying a concealed weapon. Id. at 624. The federal appeals court determined in Thomas that the officer's initial stop was lawful, finding that the defendant's initial appearance and proximity to the crime scene reasonably supported the officer's suspicion that he might be the counterfeiter. Id. at 626. However, the court found that the justification for the stop evaporated when the officer determined that Thomas did not fit the reported description of either suspect. Id. at 628. Because the officer lacked reasonable suspicion that Thomas was engaged in criminal activity, the court held that there was "no basis for the [officer's] subsequent detention and frisk." Id.

[4]Two federal courts have found no Fourth Amendment violation where an officer frisked an individual prior to conducting a consensual search of the individual's home. See United States v. Brooks, 2 F.3d 838 (8th Cir. 1993); United States v. Flippin, 924 F.2d 163 (9th Cir. 1991). In the present case, the trial court specifically found the evidence to be "unclear" as to whether Reittinger consented to Officer Bolen searching the van before he was frisked. Upon review of the record, without doing violence to the standard of review, we cannot say the court's finding of historical fact was plainly wrong or unsupported by the evidence, and, thus, we are bound by the trial court's findings. See

- 14 -

Va. App. 277, 286, 487 S.E.2d 864, 868-69 (1997), we held that an officer could lawfully frisk a pedestrian, who was stranded on an interstate highway bridge, prior to transporting him from the highway in the back seat of a police cruiser.  See also State v. Evans, 618 N.E.2d 162 (Ohio 1993); State v. Vasquez, 807 P.2d 520 (Ariz. 1991).  Most recently, this Court held that police officers did not violate the Fourth Amendment when, upon seeing two drug trafficking suspects enter a large crowd of bystanders on a public street, the officers ordered the bystanders to lie on the ground and frisked one bystander whose furtive actions caused the officer to suspect the bystander was armed and dangerous.  See Welshman v. Commonwealth, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (1998) (en banc) (citing Maryland v. Wilson, 117 S. Ct. 882, 886 (1997)).

These recent developments in our Fourth Amendment case law share a common denominator.  In each case, the police officer was required to encounter the subject of the frisk in the course of discharging his or her official duties to investigate suspected criminal activity or to protect the public safety.  The officers not only had a "right not to avoid" a possibly armed and

(..continued)
McGee, 25 Va. App. at 197-98, 487 S.E.2d at 461.  Because the Commonwealth has the burden of establishing that circumstances warranted the frisk, see Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971), and the record does not establish that Reittinger consented to the search of the van before Officer Bolen frisked him, we do not consider the question of whether a weapons frisk is justified as a reasonable, precautionary measure when the officer is conducting a consensual vehicle search.

- 15 -

dangerous individual but had the duty to perform their investigative or protective functions in the individual's presence. Terry, 392 U.S. at 32 (Harlan, J., concurring).

Indeed, in Moore, we stated:
> Terry recognized the reasonableness of a minimal intrusion on personal privacy to insure the safety of an officer investigating, in a public place, a reasonable suspicion of lawbreaking. Other authorities have recognized the reasonableness of such intrusions to insure the safety of officers performing their duties under other circumstances.

25 Va. App. at 286, 487 S.E.2d at 869 (relying on police officer's "duty" as community caretaker to transport stranded pedestrian from interstate highway bridge) (emphasis added). Accordingly, in order to conduct a protective frisk under the current case law, a police officer must legitimately be in the presence of the subject of the frisk in the course of performing the officer's civil duties to investigate suspected criminal activity or to protect the public safety. See LaFave, supra, § 9.5(a) at 247.

In the present case, once Officer Bolen had completed the investigation of Reittinger's defective equipment violation, he was no longer required, by virtue of his civil duties, to remain in Reittinger's presence. Bolen testified that after he completed the headlight investigation he did not suspect that Reittinger was otherwise engaged in criminal activity.[5]

---

[5] Code § 18.2-308(D) provides that it is unlawful to carry a weapon concealed from common observation unless a person has a

- 16 -

Moreover, the facts demonstrate that the officer was neither investigating any suspected criminal activity in proximity to Reittinger nor was he acting to secure the safety of public citizens. Rather, Bolen arbitrarily requested permission to search Reittinger's vehicle, a question he randomly and "commonly ask[s] people [after] a traffic stop." Therefore, assuming Bolen had a reasonable suspicion that Reittinger may have been armed and dangerous, we hold that Bolen's frisk violated the Fourth Amendment because, at the time of the frisk, he was not compelled to remain in Reittinger's presence by his civil duties to investigate crime or to protect public safety.

For the foregoing reasons, we hold that the trial court erred in denying the motion to suppress the marijuana seized pursuant to Bolen's unlawful frisk. See Zimmerman v. Commonwealth, 234 Va. 609, 613, 363 S.E.2d 708, 710 (1988). Accordingly, we reverse the conviction and dismiss the warrant.

Reversed and dismissed.

(..continued)
permit to do so. Thus, the fact that Officer Bolen may have believed that Reittinger was armed would not be a reason to suspect that he was illegally carrying a concealed weapon, and, in that regard, committing a crime. In Virginia, the fact that a person may be armed does not provide a reason to suspect that the person is violating the law. See, e.g., Couture, 552 N.E.2d at 540; cf. Commonwealth v. Spencer, 21 Va. App. 156, 160, 462 S.E.2d 899, 902 (1995) (lack of city or county decal insufficient basis to stop).

Benton, J., concurring.

I concur in the opinion except for the holding in Part II(A) that Reittinger was not seized when the officer began his inquiry about drugs and guns.

"[S]topping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of [the Fourth Amendment] even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979). The evidence proved that "probably no more than a second or two" after the officer told Reittinger he was "free to go," the officer asked Reittinger "if he had any drugs or weapons in the vehicle."

The inquiry concerning the drugs or weapons was an unconstitutional extension of the original traffic stop. Although the reason for the initial stop had ended, the officer continued the detention by making inquiries unrelated to the initial stop. The evidence does not prove whether the officer had returned Reittinger's vehicle registration when he began the inquiry about the drugs and weapons. Thus, I would uphold the trial judge's ruling that the officer's inquiry concerning drugs and guns was so immediate that a reasonable person would not have believed he or she was free to leave. See Florida v. Royer, 460 U.S. 491, 502 (1982). The officer's immediate transition into the inquiry was so seamless that a reasonable person would not have believed the initial seizure had ended. See id. at 497.

Therefore, I would hold that the inquiry concerning the drugs and weapons constituted an unlawful seizure under the Fourth Amendment because the officer had completed the equipment investigation and then subjected the defendant to a new and unrelated inquiry under circumstances such that a reasonable person would not have believed the initial seizure had ended or that he or she was free to leave.

Bumgardner, J., dissenting.

I respectfully dissent from Part II(B) of the opinion. I do not believe that during a lawful encounter a police officer is forbidden to conduct a carefully limited frisk for weapons unless the officer has a reasonable suspicion that the person is both armed and dangerous, and is engaged in criminal activity.

This case involved a consensual encounter following completion of a lawful stop for a traffic offense. The officer asked for permission to search the vehicle. The defendant suddenly and unexpectedly emerged from the vehicle before saying whether he would consent. The officer was entitled to remain until the defendant responded. If he gave consent, the officer was entitled to conduct the search. I do not believe the law requires that the officer carry it out under dangerous conditions. See Michigan v. Long, 463 U.S. 1032, 1049 (1983).

In the precarious moments as the defendant emerged, the officer acquired a reasonable suspicion that the defendant might be armed. He observed a bulge in the defendant's right hand front pocket. He asked the defendant what it was. On receiving no answer but on seeing the defendant move his hand toward the bulge and attempt to cover it up, the officer for the first time touched the defendant. He felt a large, hard bulge and believed it could be a weapon. The defendant continued to evade the officer's question about what was in his pocket, so the officer ordered him to remove the object. It was a smoking device with

marijuana residue and gave the officer probable cause to arrest the defendant.

Under all the circumstances of this case the actions of the officer were reasonable, and I would hold that they were a permissible interference with the defendant's personal security as permitted under Terry v. Ohio, 372 U.S. 1 (1968), and its progeny. See United States v. Baker, 78 F.3d 135, 137 (4th Cir. 1996). The officer was properly before the defendant, and he was permitted to continue the voluntary encounter. While doing so, he developed a reasonable suspicion that the defendant might be armed, although he did not have a reasonable suspicion that the defendant was engaged in criminal activity. "The law does not expect a police officer must gamble on turning away from a possible danger and chance taking a bullet in the back . . . ." Lansdown v. Commonwealth, 226 Va. 204, 212, 308 S.E.2d 106, 111 (1983), cert. denied, 465 U.S. 1104 (1984). I would affirm the conviction.